# JESSE ROBERTSON *vs.* THE AMERICAN HOMESTEAD ASSOCIATION.

An appeal lies from a decree passed under the act of 1833, ch. 181, and its supplements, and on such appeal, the appellate court will examine the terms and conditions of the mortgage, and determine whether the decree is in conformity therewith.

In proceedings under this act, the court has no power to pass any decree, not in conformity with the conditions of the mortgage, and embraced in the terms of assent to the decree contained in the mortgage itself.

Robertson *vs.* The American Homestead Association.

The court is not authorised to determine judicially, *by its decree,* the amount due on the mortgage, and a decree for a sale "unless a *certain sum* is paid," when, upon the face of the mortgage, no such sum could be due at the time of the decree, and there was no covenant or engagement in the mortgage to pay any such sum, is erroneous.

The statement of his mortgage-claim on oath, required to be filed by the mortgagee before the sale, may be filed either *before* or *after* the decree, but such statement is not conclusive, and the amount actually due is open to examination on proof, either *before* the *sale* or after the order of ratification *nisi.*

*Mortgages to building associations,* authorised and made valid by the act of 1852, ch. 148, are not within the provisions of the act of 1825, ch. 50, or if they are, the act of 1825 is repealed, *pro tanto,* by that of 1852, and the *9th* section of this latter act, by fair implication, brings such mortgages within the provisions of the act of 1833, ch. 181, and its supplements.

In ascertaining the present value, in gross, of the sums secured by such a mortgage, the court cannot look beyond the *mortgage itself.* A covenant to pay "all fines imposed by the articles of association," does not make such articles a part of the mortgage, or authorise the court to consider them in construing the mortgage, or in ascertaining the amount to which the mortgagee is entitled, *in presenti,* out of the proceeds of sale.

In the case of such a mortgage, the mortgagor is not entitled to *redeem,* on payment of the money advanced to him by the association, with interest.

The rule for ascertaining the amount which the mortgagee is entitled to receive, *in presenti,* in satisfaction of *such a mortgage,* is to ascertain *by proof* the probable duration of the society, then to estimate the aggregate amount of the monthly instalments, payable during that time, and from that sum rebate a just amount for interest, and add thereto the arrearages due, after allowing for payments made to the society.

Mortgages to building associations, such as are contemplated and provided for by the act of 1852, ch. 148, if executed in conformity to the provisions of that act, are free from all objection on the ground of *usury.*

APPEAL from the Circuit Court for Baltimore city.

On the 1st of May 1853, the appellant executed to "The American Homestead Association of the city of Baltimore," a mortgage of a leasehold interest in a lot of ground in the city of Baltimore. This deed states that: "Whereas, the said Jesse Robertson is a member of the said association, duly incorporated, and it is a condition precedent to the money below named being loaned to him, that these presents should be executed, therefore he executes the same: Now this indenture witnesseth, that the said Jesse Robertson, in consideration of

the premises, and of $460, current money, to him in hand paid by the said corporate body, the receipt whereof is hereby acknowledged, hath bargained and sold, and by these presents doth grant, bargain and sell, assign, transfer and make over, unto" the said body corporate, and its "assigns," the property above mentioned. "*Provided,* however, that if the said Jesse Robertson, his heirs, executors, administrators or assigns, shall truly pay, and perform the payments and obligations hereinafter, and as hereinafter mentioned, to be paid and performed by him, then these presents shall be void." The mortgagor then covenants, "truly to pay to the said body corporate, or the assigns thereof, interest at the rate of six per cent. per annum, payable monthly, from the day of the date hereof, upon the aforesaid sum of $460; also to pay the further sum of one dollar, weekly, payable every Friday, until the time arrives when each unredeemed share of the said body corporate's stock, shall be worth, in cash, above all losses and liabilities, the sum of $200, and the said body corporate shall have sufficient funds on hand, to pay to the holders of every unredeemed share of its stock, the said sum of $200, clear of all losses and liabilities; also, that he shall truly pay all ground-rent, taxes, and public dues, for which the herein mortgaged property is and may be liable, when the same shall be due; also to pay all fines imposed by the articles of association, of the said body corporate, for neglect to make the said payments, or any of them, as and when they are payable; also to keep the said mortgaged property and premises fully insured from loss by fire, for the use and benefit of the said body corporate, and the assigns thereof, during the continuance of these presents. All and singular these payments and obligations shall continue in force, until each unredeemed share of the aforesaid stock shall be worth, as aforesaid, $200."

The mortgage then gives a power of sale, under the act of 1836, ch. 249, upon three months' default of the mortgagor, to pay and perform the above mentioned payments or obligations, or any of them, and contains the mortgagor's assent to a decree, under the act of 1833, ch. 181.

On the 25th of August 1855, the association filed their peti-

tion, in the court below, alleging that Robertson has neglected for more than three months past, to make the weekly payments of money and of interest, mentioned in the above mortgage to be paid by him, and that default has thus taken place, and praying that a decree may be passed for the sale of the mortgaged premises. *With* this petition was filed the mortgage, and the following statement of claim, with the affidavit annexed, of the treasurer of the association, "that the aforegoing account is a just and true account of the mortgage debt, due and unpaid by the said Jesse Robertson to the said association."

"*Mr. Jesse Robertson,*

| | | To The *American Homestead Association,* | | | Dr. |
|---|---|---|---|---|---|
| 1853, May 21st. | | Cash for redemption of 4 shares, a | $115 | | $460 00 |
| 1854, Oct. 13th. | | Ground-rent & cost of distraint paid, | 16 36 | | |
| " " " | | Cash for insurance, - - - | 2 00 | | |
| 1855, Aug. 11th. | | Int. on 18.36 for 9 mos. 29 days, - | | 90 —— | 19 26 |
| " " " | | 15 months' fines, non-payment of | | | |
| | | interest, a - - - - - - | | 40 | 6 00 |
| " " " | | Int. unpaid 15% months, on - - | 460 | | 36 03 |
| " " " | | 59 weeks' fines, non-payment of - | | | |
| | | dues, a - - - - - | | 20 cts. | 11 80 |
| | | | | | $533 09 |
| Cr. | By cash paid weekly dues, - - - - | | | | $167 00 |
| | | Balance due, - - - - | | | $366 09 |

The court, (KREBS, J.,) on the same day, (25th of August 1855,) passed a decree: "That unless the said mortgagor shall, on or before the 27th day of August 1855, pay to the said mortgagee, or bring into court to be paid to it, the sum of $366.09, together with the costs of this proceeding, then the mortgaged property, in the said proceedings mentioned, shall be sold," and appointing a trustee to make the sale. From this decree the mortgagor appealed.

The cause was argued before LE GRAND, C. J., TUCK, and BARTOL, J.

*Richard R. Battee* and *Levin Gale* for the appellant, argued:

1st. That the act of 1833, so far as it gives a summary power

of foreclosure by sale, without notice to the mortgagor, applies only to mortgages given to secure the payment of certain liquidated amounts of money, at a definite period. This mortgage, if it be a mortgage and not a deed of trust, is not given to secure such definite sum, but to enforce the performance of certain covenants, some of which are purely collateral, and those which covenant for the payment of money, being for the payment of such small sums, (the largest being $1,) that they are not within the chancery jurisdiction. Act of 1715, ch. 41, sec. 7. *De ninimis non curat lex.*

2nd. That even if cases of this kind are embraced within the act, yet this decree does not follow the mode prescribed. The act authorises a decree for the sale of the mortgaged premises, *at any one of the periods limited for a default of the mortgagor.* This decree instead of pursuing this form, first adopts the account filed by the association, decides it to be the correct statement of the amount due, and then decrees that unless *that sum* be brought into court or paid within two days, the property shall be sold. This is an entire departure from the mode prescribed by the act, even if the amount named in the decree were apparently correct. The act does not authorise the court to determine, *by the decree,* the amount due upon the mortgage. The court cannot fix beforehand the amount to be paid. But the slightest examination of the alleged mortgage will show, that it does not stipulate for payment of any such sum, or any sum that by any calculation can be made to amount to that sum. This defect is properly examinable upon this appeal, and the decree must be reversed for this reason if no other. 7 *Gill* 302, *Williams vs. Williams.* 5 *Md. Rep.*, 99, *Hays vs. Dorsey.*

3rd. That this mortgage is void under the act of 1825, ch. 50, which requires that all mortgages, to be valid, must specify the principal sum or sums intended to be secured. The mortgage in *Cole vs. Albers & Runge,* 1 *Gill,* 424, was fixed as to *time* and *amount:* it could not *exceed* a certain sum. This is unlimited both as to *time* and *amount.* There is nothing upon its face to show what an *unredeemed share* is, or how many such shares there are, and yet the mortgagor is to go on pay-

Robertson vs. The American Homestead Association.

·ing until these shares shall be worth $200 each. There is nothing, therefore, upon the face of the paper, by which the *extent* of its obligations can be determined. It has been likened to the case of an *annuity*, but in such case there is but *one event* uncertain, and that is *limited*, viz., the *life of the party;* here the mortgagor is *surety* for every transaction of the association, and for every one of its officers; it may last millions of years. What bill of discovery could ever ascertain the extent of such an obligation? How could a creditor ascertain it? It is impossible to say, from the face of this deed, whether the weekly payments are to be continued for ten weeks or ten thousand. It not only stipulates that the mortgagor shall pay $1 weekly, until each unredeemed share shall be worth $200, but, to make assurance doubly sure, adds, over and above all losses and liabilities, and until the association shall have funds sufficient to pay each holder of such share $200 in cash. Thus it makes the mortgagor surety for every debtor of the association, and liable for any default of any of its officers. The corporation may go on prosperously, until the near approach of the time of its anticipated fruition. Funds may have been realised, sufficient to pay each fortunate holder of an unredeemed share $199. Another week, and the requisite amount to complete the $200, will be in the treasury, when lo! the treasurer absconds with all the assets of the company. The slow effort of gradual accumulation must be again resumed, and years are again occupied in the process, and even then when its affairs again become prosperous, there can be no assurance that it may not be again reduced to insolvency by unfortunate speculation, unforeseen accident, or the fraudulent conduct of its officers. 'Yet, during all this time, no matter how long, according to the terms of this deed the mortgagor is not only obliged to go on paying his weekly dues, but is also compelled to pay interest on the whole sum originally obtained by him from the association, although he may have paid, in the mean time, more than that amount twice over. And the only benefit he is to derive from all this is, when the association does finally accomplish its purpose, of accumulating for its unredeemed shareholders $200 for each share, his property is then

to be relieved from the burthen, *provided*, in the meantime, it has not been sacrificed by a force sale, without notice to him, for perhaps the non-payment of a dollar. Such an instrument must be void under the act of 1825. But it is supposed this defect is remedied by the act of 1852, ch. 148. But it is respectfully submitted, that that act does not authorise such a deed as this. It says, any member of such associations may execute a mortgage to secure the payment of the unpaid instalments, "on the *share or shares*" purchased by him. What is there on the face of this deed to show that Robertson was paying any thing on his *shares*, or that he held any shares in the concern? To come within the provisions of this law, the mortgage should show *upon its face* the *number of shares* the mortgagor held, and the *time* within which the association was to close, or at least *the facts* should be stated which would indicate the time.

4th. That the contract contained in this mortgage is *usurious*, and therefore *void*. The intention of the parties, and the words used in the instrument, must determine whether it be *usurious* or not. If the court can see that it is a decree to cover up usury, they will unravel the transaction and declare the instrument void. 3 *H. & J.*, 109, *Tyson vs. Rickard.* 6 *G. & J.*, 18, *Trumbo vs. Blizzard.* 3 *Do.*, 123, *Stockett vs. Ellicott.* 2 *Parson's on Cont.*, 385. Now this deed itself recites, that the $460 was *loaned* to the mortgagor, and requires him to pay *interest* on this *loan*. The mortgage is foreclosed as a *loan*, and the treasurer of the association, in his affidavit to the statement of claim filed with the mortgage, *swears* to it as a *loan*. It demands interest to be paid *monthly* over and above *weekly dues* and *fines*, and the account filed with the mortgage, shows on its face that the transaction is grossly *usurious*. The only question then is, is such a *contract void?* Chief Justice Taney in his opinion in the case of *Dill vs. Ellicott*, says such a contract is *void* under the 49th sec. of the 3rd art. of our constitution. All the English cases say, that a contract *expressly prohibited* by law is *void*. See 10 *Bing.*, 107, *DeBegnis vs. Armistead.* 23 *Amer. Jurist.*, *No.* 45, *April* 1840, *page* 12. 2 *Pet.*, 527, *Bank of U. S.*,

*vs. Owens. Smith on Cont.,* 203, 225. 1 *Parson's on Cont.,* 382. *Story on Cont.,* secs. 613, 614.

*John Carson* for the appellee, argued:

1st. That the contract is not usurious, because it is in no sense a *loan,* but a dealing with partnership funds. 8 *Eng. Law & Eq. Rep.,* 62, *Burbidge vs. Cotton.* 15 *Do.,* 477, *Seagrave vs. Pope.* 6 *Bing. New Cases,* 180, *Silver vs. Barnes.* There is no *loan* of money in the case, nor is such a loan necessary to constitute the deed a *mortgage.* It does not say the $460 is to be *returned* in any event, and how can it be a *loan* when there is no stipulation for its return? To constitute usury there must be a *loan,* and unless the principal is secured, or is to be returned at all events, it is not a loan. 6 *Cowen,* 653, *Hall vs. Daggett.* 9 *Paige,* 334, *Quackenbush vs. Leonard.* 22 *Barb.,* 124, *Pomeroy vs. Ainsworth.* That the contract is one of partnership, and not a loan of money, is apparent from the fact that the mortgage nowhere stipulates for a return of the money advanced, but for the payment of the weekly sums of money due by each shareholder. Robertson was interested in the common fund out of which he was paid when he sold his stock to the association, and he is now interested in every dollar repaid, and has expressly stipulated for the benefit of that which he now terms *usury,* by taking stock and selling it to the association; for its charter, and the act of 1852, ch. 148, secs. 6 & 7, and the mortgage, show that one of the purposes of the association was to purchase this stock, and Robertson, by his sale, got the benefit of the very provision which he now seeks to strike down as usurious. To render the contract void for usury, the papers must show on their face an *unquestioned case of usury,* and the bill will not be dismissed unless it shows the usury beyond doubt. 4 *G. & J.,* 420, *Chambers vs. Chalmers.* 2 *Md. Ch. Dec.,* 513, *McKim vs. White Hall Co.* How can the court discover, from the face of these papers, either a usurious intent, or a reservation of more than is legal, when they do not disclose the *time* the association will last, and, consequently, the amount the members will pay in?

2nd. That this mortgage is not obnoxious to the act of 1825, ch. 50. That act has received a judicial exposition in the case of *Cole vs. Albers & Runge,* 1 *Gill,* 424. The court there say, the design of the act was to prevent liens on property, to the prejudice of creditors, for amounts and claims never contemplated by the parties at the time of its execution, and of which the deed, by its terms, gave no notice. The present mortgage is not within this act, according to this exposition of it, nor is it within the mischief which the act seeks to prevent; for it contains a clearly expressed contract and one carefully limited to interest, dues, ground-rent, taxes and insurance. Though the *time* be uncertain it may be approximated, or the proceeds of sale may be invested and applied in payment of the mortgage as it becomes due, or the whole be paid off at once, with rebate of interest. There is no more objection to this mortgage, on the ground of uncertainty as to time, than to one given to secure an *annuity.* 2 *Md. Ch. Dec.,* 64, *Peyton vs. Ayres.* 1 *H. & G.,* 280, *Buchanan vs. Deshon.* But, besides this, the present mortgage is *expressly authorised* by the 7th sec. of the act of 1852, ch. 148, whatever may be the construction of that of 1825, ch. 50. If there is any conflict between them, the act of 1825 is repealed *pro tanto* by that of 1852.

3rd. That the acts of 1833, ch. 181, and 1839, ch. 9, embrace this case. They require a conveyance by way of mortgage and an assent to the passing of a decree, and both these are shown by the record. And again, the act of 1852, ch. 148, sec. 9, gives to building association mortgages the benefit of the act of 1833, and its supplements. The *form* of the decree is such as is authorised by the act of 1839, ch. 9. The propriety of the decree, the validity of the sale under it, the amount of the mortgage debt, or whether there be any mortgage debt due, can only be inquired into after the passage of the order *nisi.* 3 *Md. Ch. Dec.,* 39, *Eichelberger vs. Harrison.* 5 *Md. Rep.,* 101, *Hays vs. Dorsey.* Until then the proceedings are *ex-parte,* and whether the decree be merely that the property be sold or be in the form of the present one, "unless the defendant pay the mortgage debt," it is immate-

rial and not error; because the decree is not a judicial decision upon the amount due under the mortgage, nor is such decree conclusive against the mortgagor in this respect. Whether the account filed with the mortgage is correct or not, this court cannot determine on this appeal. The objection is to be made at the *ratification* of the sale. You can then show any cause why there *should be no sale,* either that the whole debt, or a part of it, has been paid.

BARTOL, J., delivered the opinion of this court.

It has been decided by this court, that from a decree passed under the act of 1833, ch. 181, and its supplements, an appeal lies. *Williams vs. Williams,* 7 *Gill,* 302. *Hays vs. Dorsey,* 5 *Md. Rep.,* 99. On such appeal, this court will review the proceedings as presented by the record, examine the terms and conditions of the mortgage, and determine whether the decree is in conformity therewith. In a proceeding under that act the court has no power to pass any decree, which is not in conformity with the conditions of the mortgage, and embraced in the terms of assent to the decree, contained in the mortgage itself.

In this case the decree ascertains the sum of $336.09 to be due from the appellant to the appellee, and directs, "that unless the mortgagor shall, on or before the 27th day of August 1855, pay to the mortgagee, or bring into court to be paid to him, the sum of $366.09, together with the costs of this proceeding," that the mortgaged property be sold.

That sum is the amount stated to be due in "the statement of claim" filed by the appellee under the 3rd section of the act of 1833. But, upon looking at the mortgage, it is obvious that no such sum could be due at the time of the decree. The mortgage contains no covenant or engagement for the payment of any such sum. It provides for the payment of :—

1st. "Interest monthly on $460.00."

2nd. "One dollar weekly, payable every Friday."

3rd. "All ground-rent, taxes and public dues, for which the mortgaged property may be liable."

4th. "All fines imposed by the articles of association of the

said body corporate, for neglect to make the said payments, or any of them."

5th. "To keep the mortgaged property fully insured from loss by fire, for the benefit of the mortgagee, during the continuance of the mortgage."

It is also stipulated, that these obligations are to continue "until the time arrives, when each unredeemed share of the said body corporate's stock shall be worth in cash, above all losses and liabilities, the sum of $200, and the said body corporate shall have sufficient funds on hand, to pay to the holders of every unredeemed share of its stock the said sum of $200, clear of all losses and liabilities."

There is no provision in the mortgage for the payment of the sum of $460, named therein as the consideration for which it was executed, nor any part of it as a mortgage debt.

The petition of the appellee alleges a default by the mortgagor for more than three months, "in not paying the weekly instalments and the interest secured by the mortgage."

Upon the face of the mortgage therefore, and on the allegations in the appellee's petition, the circuit court had no power to decree the sum of $366.09 to be due; and in so far as the decree directs the mortgagor to pay that sum to the mortgagee, or to bring it into court to be paid to him, it is erroneous.

The 2nd section of the act of 1833 simply empowers the court "to decree, that the mortgaged premises be sold, at any one of the periods limited for the default of the mortgagor." The proceedings contemplated by the act are *ex-parte*, and the court is not authorised, by its decree, to determine judicially the amount due upon the mortgage. Before a sale can be made under the decree, the mortgagee is required to file a statement of his mortgage claim, verified by oath. That may be done either before or after the decree. See *Hays vs. Dorsey*, 5 *Md. Rep.*, 101. But such statement is not conclusive, and the amount actually due is open to examination on proof, either before the sale or after the order of ratification *nisi*.

For the reasons above stated, we must reverse the decree of the circuit court. But considering that the appellee is entitled to a decree of sale, under his petition and the mortgage exhib-

ited, our duty, under the act of 1832, ch. 302, sec. 6, is to remand the cause to the circuit court, in order that the decree may be corrected, and such further proceedings may be had as are contemplated by the act of 1833, and as may be necessary for "determining the cause upon its merits."

The act of 1832 imposes on this court the further duty of "determining and declaring the opinion of this court on all points which may have been made before it, or which may be presented by the record." And in conformity with its requirements, we proceed to the consideration of the several questions presented.

It has been objected that this mortgage is inoperative, for want of compliance with the provisions of the act of 1825, ch. 50, in not specifying on its face the principal sum it is intended to secure, or the length of time during which the several sums thereby secured are required to be paid.

A conclusive answer to this objection is to be found in the provisions of the act of 1852, ch. 148, which, in express terms, authorises such mortgages as this, and makes them valid. This mortgage is not within the provisions of the act of 1825, or, if it be, that act is repealed *pro tanto* by the act of 1852, ch. 148, whereby building associations, incorporated under its provisions, are empowered to take such mortgages as the one before us, the very terms of the mortgage being prescribed by the 7th section of that act. The same act of 1852, by fair implication, brings such a mortgage as the present within the provisions of the act of 1833, ch. 181, and its supplements.

In the 9th section it is provided, "that the oath of the treasurer or other financial officer of any such corporation, whose duty it may be to keep the books of accounts of any such corporation, shall be so taken and deemed to be, a full compliance with the provisions of the act of Assembly of 1833, ch. 181, and its supplements."

The objection that the several sums secured to be paid, are each too small, to be within the jurisdiction of the Chancery Court, can not apply to this case; because it appears by the petition filed, that there was due at the time of the decree, an amount sufficient to bring the case within the jurisdiction of the court.

In the further progress of the case, the duty will devolve on the circuit court, to ascertain the amount which the appellee is entitled to claim under the mortgage. It is obvious that the sum actually due, according to the covenants in the mortgage, cannot be ascertained by estimating the sum of $460, named in the mortgage, as if it were a debt secured, or money to be repaid, there being no covenant in the mortgage, or any obligation on the mortgagor, requiring him to repay that sum, or any part of it, as such. The mortgage debt can consist only of the several items above enumerated, that is to say, for money due to the corporation on account of the monthly interest, the weekly instalments for fines imposed by the articles of the association, if any, and for ground rent, taxes and costs of insurance, if any have been paid by the corporation, which may be in arrear, after allowing to the appellant, the credits to which he may be entitled for payments made by him; and the balance due on said several items, constitutes the whole mortgage debt *in presenti*, and if the same be paid, a sale of the property will be prevented, and the decree will stand as a security for future instalments and liabilities.

In case of a sale of the mortgage property in entirety, it will be the duty of the circuit court to ascertain by proof the amount of the present value, in gross, of the sums secured by the mortgage, payable in future. To prescribe a precise rule for such ascertainment is not free from difficulty; because the period of time, during which they are to be paid, is not specified in the mortgage. In ascertaining that sum, the court cannot look beyond the mortgage itself; there is no such reference made in the mortgage to the "rules and articles" of the association as to make them part of the mortgage, or to authorise the court to consider them, in construing the mortgage, or ascertaining the amount which the mortgagee is entitled to receive *in presenti* out of the proceeds of sale. It has been determined, that under a mortgage similar to the one under consideration, the mortgagor is not entitled to redeem, on payment of the money advanced to him by the society, with interest. *Seagrave vs. Pope*, 15 *Eng. Law. & Eq. Rep.*, 477. But although the time during which the payments are

52    v.10

to be made, is not specified, there is a contingency stated in the mortgage, on the happening of which the payments are to cease; and its duration may be ascertained by proof, or approximated with as much certainty and exactness, as the duration of a mortgage securing an annuity for the life of a person. It is true that there are no tables or precedents for such ascertainment as is required in the present case, because such mortgages are of comparatively recent origin, and we are without judicial decisions fixing the rule of ascertainment. We are of opinion, however, that the true rule is to ascertain by proof the probable duration of the society, then to estimate the aggregate amount of the weekly and monthly instalments payable during that time, from that sum rebate a just amount for interest, and add thereto the arrearages due, after allowing for payments made to the society, and the sum thus ascertained is the amount which the mortgagee is entitled to receive *in presenti* in satisfaction of the mortgage.

To illustrate the view of the court, let it be supposed that on proof taken in the cause, it should be determined, that the association will continue for four years longer; then the ascertainment would be as follows:

| | |
|---|---:|
| Weekly dues for 4 years (208 weeks) *a* $1, | $208.00 |
| Interest on $460, 4 years, | 110.40 |
| | $318.40 |
| From this rebate interest thereon for $\frac{1}{2}$ the time, (2 years,) | 38.20 |
| | $280.20 |

To this add arrearages due after allowing payments made, -

The sum in the case supposed would be the amount, which the mortgagee is entitled to be paid out of the proceeds of sale.

The only remaining question to be considered, is the objection to the decree urged by the appellant, on the ground that the mortgage is usurious in its terms. To this it is sufficient to say, that the contract, so far as it is disclosed upon the record, contains no proof or element of usury. The only proof of the contract is to be found in the mortgage, which

appears to be in all respects such an instrument as is contemplated by the act of 1852, the consideration for which, was not a loan of money to be repaid, but the sum of $460, paid to the mortgagor by the society, as the ascertained value in advance of his shares of stock in the corporation. And although, in the preliminary part of the mortgage, it is recited to be "a condition precedent to the money below being loaned to him that these presents should be executed," yet the consideration is stated to be $460, "in hand paid by the corporation to the mortgagor," while the mortgage contains no covenant or obligation whatever for the repayment of said sum or any part of it. This court cannot regard the principal sum named in the mortgage as in any sense a loan, nor the contract, as it appears in the record, usurious.

We have carefully considered the question of the legal operation and effect of mortgages to "building associations," such as are contemplated and provided for by the act of 1852, and have no hesitation in pronouncing them, if executed in conformity with the provisions of that act, free from all objection on the ground of usury.

We adopt the views expressed by the court of Queens Bench in *Silver vs. Barnes*, 6 *Bing*, *N. C.*, 180, and by the courts of chancery in England, in *Burbidge vs. Cotton*, 8 *Eng. Law. & Eq. Rep.*, 57, and *Seagrave vs. Pope*, 15 *Ibid.*, 477. This last case involved the construction of a mortgage, executed in conformity with the *Statute of 6 & 7 Will. IV., ch.* 32, almost identical in its terms with the mortgage before us.

In construing this contract, this court confines itself entirely to the terms of the mortgage—there being no other proof in the cause, and considering that there is no evidence of usury to be found in the record, we are not called upon to express any opinion as to the effect of usury in a contract, under our constitution and laws.

For the reasons above stated, the decree below will be reversed with costs in this court to the appellant, and the cause remanded for further proceedings.

*Decree reversed and cause remanded.*