THE CINCINNATI GERMAN BUILDING ASSOCIATION No. 3 *v.*
CHARLES FLACH ET AL.

A. was the owner of ten shares in a building association, incorporated under
  the laws of the State (S. & S. 194), on June 4, 1868, and during the first year
  drew out of the treasury, in accordance with the constitution and by-laws
  of the association, $4,000. To secure this amount, together with the dues,

.interest, and fines, B. gave a mortgage on real estate to the association for the sum of $4,480, the premium of $480 not being usurious by the laws of the State. A. stopped paying dues and interest, July 27, 1869. The building association commenced suit in October, 1869, to foreclose the mortgage and on March 3, 1870, obtained an order for sale.

*Held,* that the present value of the mortgage in the decree of distribution dated, November, 1871, is obtained as follows: Ascertain by proof the probable duration of corporation, and calculate the dues and interest yet to come; then find the principal which, with interest for the supposed time, will amount to the dues and interest already calculated; this will be the present value of the anticipated payments; to this principal add the · arrearages due, and the fines for the time between the date of default and the date of the entry of decree for sale, and the sum will be the present value of the mortgage.

*Tafel & Throop,* for plaintiff.

*J. R. Von Seggern,* for defendants.

HAGANS, J.  This is an action to foreclose a mortgage, and the questions presented arise upon the distribution of the proceeds of sale.

One Frederich Reichert was a member of the association, which was incorporated according to the act passed for that purpose (S. & S. 194), and owned ten shares of stock therein of $448 each, amounting to $4,480, with the obligation to pay weekly dues and fines.  He chose, by a drawing according to the constitution and by-laws of the corporation, to loan from it, during the first year of its existence, or rather to anticipate the payment of his shares, and according to its rules he received $4,000, which was then the present equivalent value of all his stock.  This was on the 18th November, 1868.  He now, in addition to dues and fines, agreed to pay interest on that amount monthly, at the rate of six per cent., and to secure by mortgage the payment of the par value of his stock when the corporation should be dissolved, dues, interest, and fines.  There was no intention to repay the money advanced, for it was supposed that in process of time the weekly dues paid by him and the profits of the company to be distributed to him would pay

the amount, and the mortgage be canceled; but there was the obligation now to pay $1.05 weekly dues on each share, a monthly installment of interest at six per cent. on $4,000 and a fine of 20 cents a week, if he failed to pay the weekly dues.

Accordingly the defendant, Charles Flach, executed a mortgage on certain real estate, to secure all these things, the condition of defeasance in which reads as follows: "Provided, nevertheless, that whereas the Cincinnati German Building Association No. 3 have this day loaned to Frederich Reichert the sum of $4,480, representing ten shares of stock in said association; now, therefore, if the said Frederich Reichert shall well and truly pay to said association the said sum of money loaned as aforesaid, at the time and in the manner prescribed by the constitution and by-laws of said association, then these presents shall be void." Reichert made default, and there are mortgagees of Flach, subsequent to the plaintiff, who contest the amount claimed to be due from Reichert, and also that it is within the lien of the mortgage. Contributions continue on the part of all the members at the same rates, whether they loan the money by way of anticipating payment or not, until the society is able to pay the stock of those who have not anticipated, and those who have anticipated pay up according to their obligations when the society dissolves. There are a very large number of these corporations in this county, whose capital aggregates more than thirty millions of dollars, and many more millions of capital are so employed in other parts of the State, thus seeming to demonstrate their practical value and usefulness as methods of saving by small amounts in aid of the stockholders. In many of the States of the Union and in England they have been in operation for many years, but were only authorized by law in Ohio in 1867. In *Bibb Co. Loan Association* v. *Richards*, 21 Ga. 592, and *Martin* v. *The Nashville Building Association*, 2 Cold. 418, will be found a historical sketch of their origin. There are usually two plans for disposing of the money received by these corporations, the

 

"drawing" plan and the "auction" plan, the former of which the plaintiff herein adopted.

Though the provisions of the constitution and by-laws of this corporation are somewhat novel, we do not see but that they are strictly within the provisions of the act.

It was conceded in argument that the premium of $48 per share paid by Reichert, as well as the interest, penalties, and dues, did not constitute a device for obtaining usurious interest. The legislature seems to have provided for any question of this sort in the first section of the act (S. & S. 194), and as we think this association was acting within its corporate powers, and had in view the purposes contemplated by the act, we must hold that in exacting these demands there is no usury. *Silver* v. *Barnes*, 6 Bing. N. C. 180; *Shannon* v. *Dunn*, 43 N. H. 194; *Schober* v. *Ac. S. F. & L. Association*, 35 Pa. 223; *Martin* v. *Nashville Building Association*, 2 Cold. 418.

The amount for which Reichert is liable for Flach is subject to some difficulty. And we have no guide in this State by which we can determine it, for the association is to be dissolved now, so far as Flach is concerned, and yet it had six years to run when organized, if its operations are successfully conducted, as the premium of $48 to be paid by those who anticipated payments the first year, is reduced by eight dollars per year afterward to those who chose to draw out in the subsequent years. Certainly the amounts should be calculated up to the time of the entry of the decree of distribution. Default in payments of dues, etc., was made July 27, 1869, and the decree of sale was entered March 3, 1870. Now, the plaintiff claims the calculation should be made as follows:

| | | |
|---|---:|---:|
| 121 weeks of dues at $10.50, | $1,270 | 50 |
| 2 years 4 months interest, not paid, | 560 | 00 |
| 32 weeks of fines at $2, | 64 | 00 |
| Principal sum, | $4,480 00 | |
| Cash paid, $610 00 | | |
| Am't weekly dues not paid, 1,270 50—$1,880 50— | 2,599 | 50 |
| | | |
| Total amount due, | $4,494 | 00 |

This calculation is made as if the decree of distribution were made at the November term, 1871. Why the amount of unpaid dues should be deducted as above does not clearly appear. If they are within the mortgage their payment is secured, as well as the fines and interest, and they, too, might as well be deducted.

The plaintiff bases his calculation on the following rules:

1. Calculate the amount of weekly dues from the time of stopping payment to the date of decree of distribution.

2. Add to this, monthly interest for same time on amount loaned.

3. Add also fines from time of stopping payment of dues to date of order for sale, as that concludes the liability as to them.

4. From the face of the shares, take the weekly dues paid *voluntarily*, and those calculated in the decree of distribution as unpaid; and to this balance,

5. Add items 1, 2, and 3, and this will give the amount due.

These rules are, of course, based on the idea that the face of the mortgage is the true minuend, though it may be long before the society may be dissolved and its members paid off. No time is fixed in the mortgage for the payment of the money. They would be just as applicable if the foreclosure was had within six months after the loan was made, as six years, and they have no reference to the probable duration of the association, which depends on contingencies that can not be foreseen. On the other hand, Flach makes two claims: *First*, that the calculations of interest should be made on the amount actually loaned at six per cent., deducting payments made. And, *secondly*, that at all events, from a reference to the by-laws and constitution named in the mortgage, there is a contingency, on the happening of which payments are to cease; and, therefore, as no time is fixed for the payment of the money, the present value of the stock at the time of the decree of distribution, based upon the probable duration of the society, should be ascertained on testimony,

and then estimate the aggregate amount of the monthly installments payable during that time, and from that sum rebate a just amount for interest, and add thereto the arrearages due, after allowing for payments made. And to illustrate his idea, he submits the following statement, on the hypothesis that the probable future duration of the association is three years:

| | | |
|---|---:|---:|
| Weekly dues for 3 years to come, 156 weeks, at $10, | $1,560 | 00 |
| Interest for same time on $4,000, at $20 a month, | 720 | 00 |
| | $2,280 | 60 |
| Rebate interest on this sum for one half the time, | 205 | 20 |
| | $2,074 | 80 |
| Add weekly arrearages due 121 weeks, $10, | 1,210 | 00 |
| Arrearages of interest, 2 and 4-12 years on $4,000, at $20 per month, | 560 | 00 |
| | $3,844 | 80 |

Credit by 61 payments of dues at $10, - $610 00  
By paid 7 months' interest at $20, - 140 00  

| | | |
|---|---:|---:|
| | 750 | 00 |
| | $3,094 | 80 |
| Add 32 weeks fines at $2, | 64 | 00 |
| Present value of mortgage, | $3,158 | 80 |

This is calculated, say to November 7, 1871.

In support of this theory of computation, *Robertson* v. *The American Home Association*, 10 Md. 397, was cited. That was the case of a similar corporation, the shares of stock being $200. And Robertson being the owner of four shares "redeemed" or anticipated their payment by receiving, at the rate of $115 for each share, or $460, and in consideration of that sum executed a mortgage, which secured the monthly interest thereon, the weekly dues, until each unredeemed

share should be worth in cash $200, and fines, and also ground rents, etc., the property mortgaged in that case being a leasehold estate. It will be observed that there was no provision for the repayment of the principal sum in that case as in this, and like this case, no time was fixed for the payment. And the court held that the amount due must be ascertained on proof, and inasmuch as the payment of no principal sum was secured, but only the weekly dues, monthly interest, and fines, after allowing credits for money paid, these last must be the amount of the decree, which should stand as security for future liabilities. But the court also held, that if the property was sold, then the amount of the present value, in gross of the sum secured by the mortgage payable in future must be ascertained by proof. In other words, to ascertain the present value of the shares, as though the whole stock was to be paid off to the holders at this time. The right to redeem, by paying the principal sum and interest, less payments made, was refused in *Seagrave* v. *Pope*, 15 E. L. & E. 477, on the ground that the advance made was not a loan, but an anticipatory payment by way of discount, of the shares which the holder would otherwise be entitled to at the termination of the society, and that disposes of the first claim made by Flach. And that was a case in which there was no condition in the mortgage for the repayment of the money advanced. Now here, not the sum advanced, but the ultimate value of the shares, is secured to be repaid by the mortgagor, "at the time and in the manner prescribed by the constitution and by-laws of said association." Although no time is fixed for repayment, and no contingency stated when it shall be due, still, on reference to articles 10 and 17 of the constitution and by-laws, which this corporation had the right to make under the law, and which are sufficiently incorporated in the mortgage to make them part of it, we find that the whole operations of the society are to be determined, and the moneys distributed among the stockholders and all mortgages released, whenever each stockholder has received $448 per

share. When this will happen, depends on the success of the operations of the corporation. Unforeseen contingencies may happen to delay it many years. No tables have been prepared by which the present value of such interest can be ascertained like annuity tables. And, indeed, proof of this subject would be an unsatisfactory method of determining it. But no other way would seem to be left open, and we are disposed to adopt it.

While there is not power of present redemption in the mortgage, by the payment of the principal sum advanced and interest, and no offer to comply with the constitution and by-laws as to which default has been made, we see no reason why the property may not be sold in entirety to sat isfy the mortgage according to this rule. No one makes objection to it.

It is apparent, from the premium charged, the debt, and the premium to be charged those who drew out subsequently, decreased by eight dollars for each year, that when the society was organized, it was supposed it would be able to wind up and dissolve in six years. All the profits of its operations have reference solely to the time of dissolution, and as those profits are greater or less, its dissolution will be hastened or retarded.

The principal sum secured by the mortgage is to be repaid at no fixed time, but according to the constitution and by-laws, that is, it is not to be repaid at all, for whenever the society has realized by its operations from all sources, $448 a share, it is ready to dissolve. We see no reason, therefore, why we should necessarily take the sum named in the mortgage as the basis of a calculation, when we are to ascertain the present value of the mortgage, with reference to the probable duration of the society. The sum advanced was at the time the present value of the stock, based upon its supposed duration. The law, which does not treat these transactions as usurious, allows a premium of forty-eight dollars a share to be taken from the defendant by the corporation. These premiums have reference to its sup-

posed existence in the future, and the stockholders pay it accordingly. We are now to anticipate the dissolution of the society so far as Flach is concerned. It is just to leave the premiums in the hands of the society, and we are to calculate the dues for the time to come according to the obligations of Flach. But inasmuch as these payments are anticipated, the society should pay interest for the use of the same until the society dissolves. We can see no reason for deducting the payments already made by Flach from such a calculation, as in 10 Md. 397. Why that was done in that case is not apparent, but, on the contrary, seems to be unjust to the society: nor yet why interest on the anticipated payments was rebated for only half the future duration of the society, as that seems to be unjust to the defendants. That case does not appear to have been well considered, and the rule adopted appears in many respects to be wholly arbitrary and inapplicable to the case at bar.

We think such a rule must be ascertained as will be just to the society and to the remaining stockholders, while it is consistent with the obligations of the individual member and the condition of his mortgage, and gives to him the benefit of all profits made. As we have seen, the dissolution of the society occurs whenever from the profits of its operations it can pay each member $448 for each share of stock. Of course, if the operations are very profitable, it will dissolve sooner than if otherwise; and in any event, upon the dissolution of the society, the party gets the premiums back out of the profits of its operations. When it will dissolve can only be ascertained upon testimony, therefore, and in any event must be more or less unsatisfactory, but no other way seems to be left open to us. Having ascertained the probable duration of the corporation, then calculate the dues and interest yet to come. Then, such a sum as put to interest for the supposed time as will realize the amount of dues and interest calculated, is the present value of the anticipated payments. To this amount, add the arrearages due, and the sum will be the present value of the mortgage.

To illustrate the rule stated, suppose this society will probably endure for three years to come, and that the decree of distribution will be entered as of the November term, 1871, the account will stand thus:

| | | |
|---|---|---|
| Weekly dues for 3 years to come, 156 weeks, | $1,638 | 00 |
| Interest for same time on $4,000,  -    -    - | 720 | 00 |
| | $2,358 | 00 |
| Now, $1,998 30 if put at interest for 3 years will be, | $2,358 | 00 |
| Then the present value of the anticipated payments is   -    -    -    -    -    -    - | $1,998 | 30 |
| Arrearages of weekly dues, 121 weeks, at $10.50, | 1,270 | 50 |
| Arrearages interest, 2 4–12 years,   -    -    - | 560 | 00 |
| Fines for 32 weeks to entry of decree for sale, | 64 | 00 |
| The present value of mortgage,    -    - | $3,892 | 80 |

For the purpose of ascertaining by testimony the probable duration of the society, as the basis of a calculation according to the rule we have stated, the cause will be remanded to Special Term, and distribution may be had accordingly.