HENRY R. WILLIAR *vs.* BALTIMORE BUTCHERS' LOAN
AND ANNUITY ASSOCIATION OF BALTIMORE CITY.

*Usury—Act of 1876, ch. 358—Right of action to recover back
Usurious interest—Retroactive legislation affecting such
Right of action—Payment while in vinculis not a Voluntary
payment—Mortgage—Construction of secs. 87 and 88 of the
Act of 1868, ch. 471—Rule for calculating Interest where
partial payments have been made.*

The Act of 1876, ch. 358, amends Art. 95 of the Code relating to usury, by
adding thereto an additional section as follows: "Provided, however,
that nothing in the preceding sections of this Article shall be so construed
as to make usury a cause of action in any case where the bond, bill obliga-
tory, promissory note, bill of exchange or other evidence of indebtedness
has been redeemed or settled for by the obligor or obligors, in money or
other valuable consideration, except that of a renewal in whole or in part
of the original indebtedness, but this section shall not apply to any cases of
claims or suits now instituted by assignees in bankruptcy." A mortgage
debt upon which usury was alleged to have been paid, was finally settled in
September, 1875, the debtor protesting at the time against what he con-
sidered an illegal demand and finally paying it, as he stated in his testimony,
"to have his property released." In October, 1875, he brought suit to
recover back the money paid in excess of the legal rate of interest. The
Act of 1876 was approved on the 7th of April, 1876, while this suit was
pending. HELD:

1st. That the Act of 1876 in providing that the additional section should not
apply to any cases of claims or suits then instituted by assignees in bank-
ruptcy, showed the intent of the Legislature that it should have a retroactive
operation and apply to all cases, save those expressly excepted, whether
arising before or after its passage.

2nd. But that it was not within the constitutional power of the Legislature to
take away or impair by retroactive legislation the plaintiff's vested right to
maintain the suit.

The Code, Art. 95, fixes the legal rate of interest, and declares that a person
guilty of usury shall forfeit all the excess above the principal sum and the

Williar *vs.* Balt. Butchers' Loan and Annuity Asso., &c.

legal interest thereon, "which forfeiture shall enure to the benefit of any defendant who shall plead usury and prove the same." HELD:

1st. That the above suit was not a proceeding to enforce a forfeiture under the Code.

2nd. That the provisions of the Code had no other application to the case except as they fix the legal rate of interest to which the lender was entitled.

3rd. That all in excess of that rate paid to him was money received by him in violation of law, to which he had no legal right, and which the other party was entitled to recover back in an action of *assumpsit* as money had and received to his use.

4th. That a claim or right of action of this kind, when it had become vested, was protected by the constitutional provision and could not be destroyed or taken away by the Legislature by a retroactive law.

5th. That the payment of the usurious interest having been made by the debtor while *in vinculis*, the doctrine of voluntary payment had no application to the case.

The defendant in the above case was a corporation created under the Act of 1868, ch. 471; its objects as set out in the charter being "the purchase and improvement of real estate, advancing money on mortgages," &c. The aggregate of the capital stock was $300,000 divided into 1000 shares of the par value of $300.00 per share. The plaintiff, not being a member of the corporation, made application to it to borrow $3000 to be secured by mortgage of his house and lot. He was informed that under the defendant's rules he would have to subscribe to some shares of the defendant's stock. Thereupon he agreed to take the loan, and did on that day subscribe for *eleven* shares of stock, on the same day he paid the defendant on account of the arrangement for the loan the sum of $14.85. Three or four days thereafter he completed the negotiations for the loan and received the sum of $3025.00 and executed a mortgage, by which he was to pay the weekly sum of $14.85 for and during the period of 300 weeks, and taxes on the mortgage debt, and the annual rent and taxes on the mortgaged property, and all fines that might be imposed on him by the mortgagee, and was to obey all by-laws and rules then in force or thereafter to be adopted by the association. The mortgage declared that the mortgagor released to the mortgagee "*all his interest in,* and *the shares hereby redeemed,* and *to all profits that may be hereafter made by the mortgagee.*" HELD:

1st. That sections 87 and 88 of the Act of 1868, ch. 471, had no application to a corporation like the defendant, nor to such a transaction as the one above mentioned, which was nothing more nor less than a loan of money by

the association to the plaintiff, and a mortgage of his property for its repayment with usurious interest.

2nd. That the fact that he became a shareholder, and the money advanced to him was called a redemption of his shares, made no difference, as he subscribed for the shares in order to borrow the money, and immediately transferred or released them to the association, and ceased to have any further interest in the assets or funds of the corporation.

3rd. That in stating the account between the plaintiff and defendant, if there were partial or weekly payments made by the plaintiff to the defendant on account of the money borrowed, the plaintiff should be charged with interest at the rate of six per cent. per annum on the amount borrowed, and from the aggregate of principal and interest the partial payments should be deducted and (if in excess of interest,) the balance should bear interest to the date of the next payment, and so on from time to time as the payments were made, until the whole was paid by the plaintiff.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. That if the jury believe the defendant loaned the plaintiff the sum of $3025, and took from him the mortgage offered in evidence in this case, that said mortgage does not conform to the provisions of the law, authorizing corporations of this kind to make advances in redemption of their stock, and must be governed by the ordinary rules between mortgagor and mortgagee, or debtor and creditor.

2. That the defendant was not entitled to receive from the plaintiff more than six per cent. per annum, by way of interest on the amount of money loaned by it to the plaintiff, and any amount so received from the plaintiff over and above six per cent. per annum, was usury, and to that extent the plaintiff is entitled to recover in this action.

3. That in stating the account between the plaintiff and and defendant, if the jury find there were partial or weekly payments made by the plaintiff to the defendant on account of the money borrowed, the plaintiff should be

charged with interest at the rate of six per cent. per annum on the amount borrowed, and from the aggregate of principal and interest the partial payment should be deducted, and (if in excess of the interest,) the balance to bear interest to the date of the next payment, and so on from time to time as the payments were made, until the whole was paid by the plaintiff.

And the defendant offered the following prayer:

If the jury shall believe from the evidence, that the mortgage from the plaintiff in this case to the defendant, has been paid, redeemed or settled for by the plaintiff to the defendant, and that the same has been released by the defendant, then the plaintiff is not entitled to recover in this case, although the jury shall believe that the amount repaid by the plaintiff included usurious interest.

The Court, (YELLOTT, J.) refused the plaintiff's prayers and granted the prayer of the defendant. The plaintiff excepted. The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART and ROBINSON, J.

*W. A. Wade* and *J. J. Wade*, for the appellant.

The action is really *indebitatus assumpsit*, although the declaration in accordance with the statute omits the usual formal parts in such action. It is founded on the promise and agreement of the appellee, implied in law, to repay so much of the money as was paid by the appellant in excess of the principal and interest due on the mortgage. *Baugher vs. Nelson,* 9 *Gill,* 308; *Scott vs. Leary,* 34 *Md.,* 390.

The provisions of our statute law on the subject of usury, do not deprive the appellant of his common law remedy.

The appellant's first prayer is fully sustained by this Court in several cases. *Oak Cottage Building Asso. vs. Eastman and Rogers*, 31 *Md.*, 561, and *Balt. Per. Building & L. Society vs. Taylor*, 41 *Md.*, 409.

The second prayer is but a statement of the provisions of our statute on the subject, (see Code, p. 696,) together with the appellant's common law remedy, as laid down in *Scott vs. Leary*.

The third prayer sets out correctly the rule for calculating interest where partial payments have been made, as announced in *Fitzhugh vs. McPherson*, 9 *Gill & J.*, 51.

All Acts are to be construed prospectively, and should be so limited in their operations, unless, by express terms or necessary implication, a different intention is manifest. *State, use of Mayor, &c. of Balto. vs. Norwood*, 12 *Md.*, 195; *Moon vs. Dunden*, 2 *Exch.*, 22; *Dash vs. VonKleck*, 7 *John.*, 477.

The appellant had a vested right to his remedy, and it cannot be taken from him by any subsequent legislation. *Bedford vs. Shilling*, 4 *Ser. & Rawle*, 401; *Butler vs. Palmer*, 1 *Hill*, 334; *Bigelow vs. Pritchard*, 21 *Pickering*, 174; *New Central Coal Co. vs. George's Creek Coal and Iron Co.*, 37 *Md.*, 557; *Greenough vs. Greenough*, 11 *Penn.*, 489; *Steamship Co. vs. Jolippe*, 2 *Wall.*, 459; *Sedgwick on Const. of Statute*, 351.

The appellant's claim arises *ex contractu*, and is protected by the Constitution of the United States, which prohibits the passage of any law impairing the obligation of a contract.

*Samuel Snowden*, for the appellee.

The forfeiture provided for by sec. 4, of Art. 95, for the usury, is a penalty, and the party agreeing to pay the usury by pleading the same, might prevent the recovery of such excess as was paid or agreed to be paid; and before the Act of 1876, ch. 358, he might even have paid the

whole debt, including the usurious portion of it, and afterwards might sue the usurer and recover back such excess. *Scott vs. Leary*, 34 *Md.*, 389.

This right to recover back was founded upon the idea that there had been some oppression or hardship upon the borrower, in the exacting of it, and although the statute, in terms, gave no such right, yet because it declared the contract or the excess over six per cent. interest void, the Courts made it an exception, from the maxim *"in pari delicto potior est conditio defendentis,"* and gave a remedy in an action for money had and received. *Welch vs. Wadsworth*, 30 *Conn.*, 149, (156;) *Browning vs. Morris, Cowp.*, 790.

The forfeiture of the excess was a penalty upon the usurer, prescribed by the statute for the offence of taking the usury.

By the Act of 1876, ch. 358, the Legislature repealed or amended the law, so as to confine the penalty to the pleading of the usury, and thus preventing a recovery. In cases however, when the debt out of which the usury arises, has been paid or satisfied, the penalty is taken away, thus repealing so much of the statute as permitted such recovery, and by this repeal, the right to recover usury back ceased, whether the suits were pending at the time of the passage of the Act or not. For being a repeal of penalties and forfeitures, it operated as well on existing as on subsequent suits, extinguishing not only the right of suing for the recovery, but of maintaining a claim for such a cause of action, although previously made by suit. *Curtis vs. Leavitt*, 17 *Barb.*, 309, 367; *Same Case*, 15 *N. Y.*, 9, 85; *Butler vs. Palmer*, 1 *Hill*, 324, 329; *Norris vs. Crocker*, 13 *How.*, 429; *State vs. Youmans*, 5 *Ind.*, 280.

The money in this case was paid by the appellant on the seventeenth day of September, 1875, and suit was brought by him on the 18th of October, 1875; before the trial of the case, the Act of 1876 was passed, which

.changed the usury law so as to entirely destroy the cause of action; and when the case was tried, there was no right in the appellant to recover. For as the law, in force at the time of the seeking of the remedy, must govern the case, he was expressly prevented therefrom. *Parmelee, et al. vs. Lawrence,* 48 *Ill.,* 331 ; *State vs. Norwood,* 12 *Md.,* 195.

But if the Act of 1876, ch. 358, is not a law repealing a penalty, it is a law which, by its express terms, has a retroactive operation, and affects all actions for usury pending at the time of the passage of the law, as well as those brought afterwards. This clearly was the intention of the Legislature, otherwise the exception contained in the law, to wit: *" But this section shall not apply to any cases of claims or suits now instituted by assignees in bankruptcy,"* would have been useless, for if it had intended that the law should only apply to suits that might be brought afterwards, then it certainly would have made no exception at all. Such cases only as fall within the exception are excepted from the general words of the section, and therefore, according to the maxim "the exception proves the rule," all other cases are left within the operation of the enacting clause. *Briggs vs. French,* 2 *Sumn* , 251, 257 ; *Adams vs. Bancroft,* 3 *Sumn.,* 384, 387.

The Legislature having thus plainly expressed its will that the law should operate upon pending suits, the Courts will give such operation to it, for it is well settled in Maryland that an Act of Assembly is not invalid, merely because it is retrospective in its terms, or is made applicable to pre-existing or pending cases. *Elliott vs. Elliott,* 38 *Md.,* 357, 362 ; *State vs. Norwood,* 12 *Md.,* 177, 195 ; *Mayor, &c. vs. Sehner,* 37 *Md.,* 180, 198 ; *Cearfoss vs. State,* 42 *Md.,* 403.

This statute is not unconstitutional as a law impairing the obligation of contracts ; it is only the regulation of a matter which is always a subject of statutory regulation,

and with which the constitutional provision was not intended to interfere. *Savings Bank vs. Allen*, 28 *Conn.*, 97 ; *Barlow vs. Gregory*, 31 *Conn.*, 261 ; *Leather vs. Ship-builders' Bank*, 40 *Me.*, 386, 388.

The only part of the contract in this case which is alleged to have been invalid, is the excess over six per cent. interest; by the terms, however, of the mortgage, the appellant agreed to pay it, and he had the option, before payment, to repudiate it, or after payment to sue for it—he elected to pay it, and the Legislature then deprived him of the remedy to recover it back, thus validating and confirming what he had not only agreed to do, but had actually executed. The contract itself contained no stipulation that if he paid the debt, the mortgagee would pay him back the excess over and above six per cent., and there being no such stipulation, the law could not impair what did not exist. Nor does it deprive the appellant of any vested right, for there is no such thing as a vested right, to plead usury. *Baugher vs. Nelson*, 9 *Gill*, 299 ; *Sedgwick Stat. and Cons. Law*, 659.

There certainly cannot be any vested right to recover it back after it is paid, and the transaction, out of which it arises, is settled. The claim of the appellant has its foundation only in the remedy, which the Legislature may change at any time, and thereby destroy the right. *Oriental Bank vs. Freeze*, 18 *Me.*, 109.

It is nothing more than an Act relating to the *remedy*, as was held by this Court in reference to the Act of 1845. *Bandel vs. Isaac*, 13 *Md.*, 202, 225.

The appellant had the right, before the payment and satisfaction of the mortgage, out of which the alleged usury arose, to have pleaded usury or made any other defence, but as the right was one which he acquired under and by virtue of a legislative Act, if he had actually pleaded it, and the Legislature had then repealed the law, his right would have gone with the repeal. For

all rights acquired under a statute are subject to the change of the statute, and do not become vested until judgment is finally obtained. The right to recover back the usury, after the payment of the debt, including the usurious part of it, being a right which the Courts have given by virtue of the terms of the statute, it was subject to the control of the Legislature as a matter of remedy, which may always be changed by the Legislature. The prayer of the appellee was properly granted by the Court below.

The appellee was incorporated under the "Act of 1868, ch. 471, as a Land and Loan Company, by sec. 92 of which the sections relating to Building Associations are made applicable to such companies. This Act has been amended by the Act of 1872, ch. 176. Under its Act of incorporation, therefore, the appellee had a right to sell its shares at such premium as might be agreed upon with the member; and it had, therefore, authority, under its charter, to make the contract of mortgage with the appellant. And the prayers of the appellant were properly refused by the Court, even if the Act of 1876, ch. 358, should be held not to apply.

The payments, made by the appellant to the appellee, were such as he had, by his contract, agreed to make, and were received by the appellee under a claim of right and without any fraud on the part of its officers; and before making the settlement of the mortgage, the appellant examined the account, objected thereto, but in order to obtain the release of his mortgage, paid its demands, and he was not therefore entitled to recover back any of the money so paid. *Awalt vs. Eutaw Building Association No. 4, 34 Md.*, 435.

BARTOL, C. J., delivered the opinion of the Court.

This suit was instituted by the appellant to recover money paid to the appellee in excess of the legal rate of interest.

The right of a borrower to maintain an action of this kind has been settled by the case of *Scott vs. Leary*, 34 *Md.*, 389. The defence relied on by the appellee is based entirely upon the *Act of Assembly of* 1876, *ch.* 358. The Act amends Art. 95 of the Code, relating to Usury, by adding thereto an additional section as follows :

" Provided, however, that nothing in the preceding sections of this Article shall be so construed as to make usury a cause of action in any case where the bond, bill obligatory, promissory note, bill of exchange or other evidence of indebtedness, has been redeemed or settled for by the obligor or obligors, in money or other valuable consideration, except that of a renewal in whole or in part of the original indebtedness, but this section shall not apply to any cases of claims or suits now instituted by assignees in bankruptcy."

In this case the mortgage debt upon which the alleged usury was paid, was finally settled in September 1875. The appellant protesting at the time against what he considered an illegal demand, and finally paying it, as he states in his testimony, " to have his property released."

This action was brought on the 18th day of October 1875. The Act of Assembly was approved on the 7th day of April 1876, while this suit was pending.

The Circuit Court rejected the plaintiff's prayers and granted the prayer of the defendant, thereby virtually instructing the jury that the Act of 1876, operated to destroy the plaintiff's right of action.

The first question to be considered arises upon the construction of the Act of Assembly. Does it apply to pending cases, or must it be construed as intended to apply only to future transactions ?

No rule of construction is better settled than that every statute is to be construed as prospective in its operation, unless the intention of the Legislature that it shall have a retroactive effect is clearly expressed in the statute. This

rule is founded in reason and justice, and has been repeatedly recognized and enforced by the Court of Appeals. We refer to *Baugher vs. Nelson,* 9 *Gill,* 303 ; *State vs. Norwood,* 12 *Md.,* 206 ; *Clark vs. Mayor, &c. of Balt.,* 29 *Md.,* 283 ; *Davis, Adm'r vs. Clabaugh,* 30 *Md.,* 508, and *Herbert and Hairston vs. Gray,* 38 *Md.,* 529. But for the exception contained in the Act, we should have no hesitation in construing it as prospective only in its operation, and as having no relation to a case where the cause of action had arisen before the Act was passed, and which was pending at the time of its passage. The contrary intent is not plainly expressed in the body of the law, and the general rule of construction would apply. But the cardinal rule of construction is to ascertain the intention of the Legislature, as it is expressed in the words of the statute, and for this purpose the whole must be considered together. The law provides *" that this section shall not apply to any cases of claims, or suits now instituted by assignees in bankruptcy."* This provision removes whatever ambiguity there is in the antecedent words of the law, and shows plainly the intent of the Legislature that it should have a retroactive operation, and apply to all cases, save those expressly excepted. If this be not the meaning and intent of the Legislature, this last provision would be nugatory and useless ; for why should the Legislature, by express words, except from the operation of the Act, the particular class of cases mentioned, unless they had been embraced within the general provisions of the law. These are sufficiently broad and comprehensive to embrace all cases, whether antecedent or subsequent, and the concluding provision to which we have referred, demonstrates that such was the legislative intent.

A proviso in a statute excepting from its operation a particular class of cases, which might or might not be otherwise embraced within its general provisions, often

comes in aid of its construction. *Magruder & Tuck vs. Carroll,* 4 *Md.,* 335, and *Alexander vs. Worthington,* 5 *Md.,* 472, were cases involving the construction of the Act of 1849 relating to wills. The question was whether the Act applied to wills executed before its passage. The *first section* was ambiguous, and taken alone would have been construed as prospective only in its operation. The second section excepted from its operation wills made before the passage of the Act, where the testator should die before the first day of June thereafter. This section, the Court said, removed all ambiguity from the first section, and clearly showed the intent of the Legislature that the Act should have a retroactive effect, and apply to all wills whenever executed, except such as were particularly mentioned in the *second section*; for upon any other construction, the second section would be useless, and without meaning. The reasoning of the Court in those cases, and the rule of construction there adopted are applicable here. We refer also to *Briggs vs. French,* 2 *Sumner,* 251, 257, and *Adams vs. Bancroft,* 3 *Sumner,* 384, 387, as showing the effect which an exception in a statute has upon its construction.

After the best consideration we have been able to give to this question, we are of opinion that the Act of 1876 was intended to have a retrospective operation, and to apply to all cases, whether arising before or after its passage.

The next question to be considered is whether it was within the constitutional power of the Legislature, by a retrospective statute, to take away or impair the plaintiff's right to maintain the suit.

It is contended by the appellant that to give to the Act of Assembly this effect would be within the prohibition of the Constitution of the United States *Art.* 1, *sec.* 10, which declares that " *No State * * shall pass any law impairing the obligation of contracts.*" The proposition

558 MARYLAND REPORTS.

Williar *vs*. Balt. Butchers' Loan and Annuity Asso., &c.

maintained by the appellant is that when the Act was passed he had a valid legal right of action, and that the Act of Assembly taking away his remedy is in violation of the constitutional inhibition; and he contends further that the Act so far as it is sought to apply it to the present case is inoperative; because the Legislature cannot by a retrospective law take away or destroy a vested right.

The construction of the constitutional provision, so far as it relates to the remedy or right of action has been often considered and decided. The result of these decisions is thus stated in *State vs. Jones*, 21 *Md.*, 437: "The leading cases on this subject all recognize the distinction between the obligation of a contract, and the remedy by which it may be enforced, and while they treat the latter as a mere creature of the law, at all times within the scope of legislative regulation, they yet establish the rule that the abrogation or suspension of a remedy necessary to enforce the obligation of an existing contract, according to its spirit and true legal intent, is within the inhibition of the Constitution and therefore void."

We refer to *Cooley on Cons. Lim.*, 284 *to* 294, where this subject is fully discussed, and many cases cited. On page 289 the author says, "But a law which deprives a party of all legal remedy must necessarily be void." It has been repeatedly held by this Court that the Legislature cannot by a retroactive law, take away vested rights. *Baugher vs. Nelson*, 9 *Gill*, 309; *Wilderman vs. Mayor, &c., of Balt.*, 8 *Md.*, 551; *Bramble vs. Twilley*, 41 *Md.*, 436. The application of this rule to the case before us, depends altogether upon the nature of the legal right asserted by the plaintiff. The Code, Art. 95, fixes the legal rate of interest, and declares that a person guilty of usury shall forfeit all the excess above the legal interest.

The appellee contends that this is a suit to enforce the forfeiture, that the claim of the plaintiff is for the forfeiture or penalty imposed by the Code, which it was in

the power of the Legislature at any time to alter or repeal. If this be the nature of the demand, there can be no doubt about the correctness of the proposition. It is well settled that such a claim is not within the protection of the constitutional provision, not resting upon or growing out of contract, but based exclusively upon the statute, and that it is in the power of the Legislature at any time to repeal or alter the statute, and the right to recover the forfeiture is thereby destroyed, although it may have been incurred before the statute imposing it has been repealed. Such is no doubt the well established doctrine of the law. But a reference to *Scott vs. Leary*, 34 *Md.*, 589, will show that this doctrine has no application to the present case. That was a suit like the present, to recover money which had been paid by the plaintiff upon a usurious contract, in excess of the legal rate of interest. It was there held that the suit was not for the recovery of a forfeiture, that the right of action was not conferred by the Code, nor was it based upon the provisions of the Code, but existed at the common law, and grows out of the contract and the legal rights of the parties with respect thereto. The Code, Art. 95, sec. 1, fixes the legal rate of interest at *six per centum per annum;* and *sec*. 4 provides that any person guilty of usury shall forfeit all excess above the principal sum and the legal interest thereon, " which forfeiture shall enure to the benefit of any defendant who shall plead usury and prove the same." This is the only forfeiture declared by the Code, and the only mode of enforcing it as therein provided, is by a defendant who " shall plead usury and prove the same." It is clear that this is not a proceeding to enforce the forfeiture.

The provisions of the Code have no other application to the case, except as they fix the legal rate of interest to which the lender is entitled, all in excess of that rate paid to him is money received by him in violation of law, to which he had no legal right, and which the other party is

entitled to recover back in an action of *assumpsit*, as money had and received to his use.

· In such case the implied *assumpsit* arises at the common law. The right of action is not conferred by the Code, which is resorted to as evidence fixing the legal rights of the parties under the contract, as respects the rate of interest, but is not the ground of the right of action. This is the effect of the decision in *Scott vs. Leary*, which seems to us to be conclusive of the case. It being clear both upon reason and authority that a claim or right of action of this kind when it has become vested, is protected by the constitutional provision, and cannot be destroyed or taken away by the Legislature by a retroactive law.

" A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Where it springs from contract, or from the principles of the common law, it is not competent for the Legislature to take it away." *Cooley on Const. Lim.*, 362.

Many authorities are cited by the author which it is not necessary to refer to here.

For these reasons we are of opinion the Circuit Court erred in granting the defendant's prayer.

The point made by the appellee that the money in this case having been paid voluntarily, cannot be recovered back, is answered by the decisions in *Baugher vs. Nelson* and *Scott vs. Leary*, in which it was held that the debtor being considered in law *in vinculis*, the doctrine of voluntary payment has no application to such cases.

As the case must be sent back for a new trial it is necessary to consider the plaintiff's prayers.

The appellee is a corporation created under the Act of 1868, ch. 471, its objects, as set out in the charter, are " the purchase and improvement of real estate, advancing money on mortgages, &c." The aggregate of the capital stock is $300,000, and the capital stock is divided into 1000 shares of the par value of $300 per share.

It appears by the proof that the appellant, not being a member of the corporation, made application to it, to borrow $3000, to be secured by a mortgage of his house and lot in the city of Baltimore ; that he was informed under defendant's rules, he would have to subscribe to some shares of the defendant's stock, thereupon he agreed to take the loan, and did on that day subscribe for *eleven* shares of stock which was estimated, when paid up, at the par value of $300 a share, on the same day he paid the defendant on account of the arrangement for the loan the sum of $14.85 ; three or four days thereafter, he completed the negotiations for the loan, and received the sum of $3025, and executed the mortgage.

This instrument recites that the appellant, being a member of the corporation, has received an advance of $3300 on eleven shares of its stock held by him, in his own name. The condition of the mortgage is that the mortgagor shall make the payments, and perform the covenants herein on his part to be performed—as follows:

1st. That he will pay the weekly sum of $14.85 (being for weekly dues or interest) for and during (*the period*) *of three hundred weeks.*

2nd. That he will pay all taxes on the mortgage debt hereby created, and the annual rent and taxes on the mortgaged property.

3rd. That he will pay all fines that may be imposed on him by the mortgagee, and obey all by-laws and rules, now in force, or thereafter adopted by the association.

The instrument further declares that the mortgagor "released to the mortgagee *all his interest in,* and *the shares hereby redeemed, and to all profits that may be* hereafter made by the mortgagee."

It thus appears that the appellant upon a loan or advance to him of $3025, covenanted to pay weekly for three hundred weeks the sum of $11, on account of principal, making in all $3300, and to pay for the same length of

time the interest on $3300, in weekly payments of $3.85—making as stated in the mortgage $14.85 per week.   Such a contract between individuals would not be sanctioned or enforced, being clearly usurious, the mortgagor could be compelled to pay no more than the legal interest on the sum actually loaned.   It is said that the appellee is authorized to enter into such contracts by the Act of 1868, ch. 471, sec. 92.   That section provides "That such of the provisions of the foregoing sections, from section 84 to section 91, both inclusive, as shall be found applicable to corporations which may be formed in this State, for the purpose of loaning money on real or personal property, shall be held to apply to said corporations."   The sections from 84 to 91 refer to a class of corporations known as "*Building Associations*" and which were first authorized in this State by the Act of 1852, ch. 148.   That Act came before this Court in *Robertson's Appeal*, 10 *Md.*, 397, and it was held that mortgages to such associations, made in conformity to the Act were not usurious; for the reason. that they are not made to secure the repayment of money loaned, but the mortgagor being a shareholder for a certain sum redeems his shares, and covenants to pay to the association certain stipulated instalments, weekly or otherwise until his mortgage is redeemed, not by the return of the money advanced, nor for any fixed period of time ; but until by the accumulation of the funds of the association the unredeemed shares shall become of a certain value. Thus the mortgagor though his shares are redeemed, continues to have a joint interest in the association.   The transaction is not one in which money is loaned and its repayment secured by the mortgage, and it has been held that the usury laws have no application to it.   It is such associations as those, that are contemplated in sections 87 and 88 of the Act of 1868, ch. 471, but those sections have no application to a corporation like the appellee, nor to such a transaction as the one under consideration, which

was nothing more nor less than a loan of money by the association to the appellant, and a mortgage of his property for its repayment with usurious interest. The fact that he became a shareholder and the money advanced to him is called a redemption of his shares, makes no difference ; he subscribed for the shares in order to borrow the money, and immediately transferred or released them to the association, and ceased to have any further interest in the assets or funds of the corporation.

The first prayer of the plaintiff ought to have been granted, declaring that the mortgage does " not conform to the provisions of the law authorizing corporations of this kind to make advances in redemption of their stock, and must be governed by the ordinary rules between mortgagor and mortgagee or debtor and creditor." *Baltimore Permanent Building and Land Society vs. Taylor*, 41 *Md.*, 409 ; *Birmingham and Wife vs. The Maryland Land and Permanent Homestead Association, ante p.* 541.

It follows from what has been said, that the *second* and *third* prayers of the appellant ought also to have been granted. The third prayer states correctly the rule for calculating interest where partial payments have been made.

*Judgment reversed, and*
*new trial ordered.*

(Decided 16th February, 1877.)