Boynton, J.
The rights of the parties became fixed before the approval of the Revised Statutes of the United States; and in so far as the case is affected by the national banking act, it is governed by the act of 1864.
Section 30 of that act, among other things, provided that, the banking association might take and reserve, on any loan or discount made, . . . interest at the rate allowed by the laws of the state where the bank was located, and that “ the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has-been agreed to be paid thereon. In case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of the interest thus-paid, from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred.”
The position of the plaintiff is, that the liability created by the provisions of this section was strictly penal, and that an action to enforce it is cognizable only in the courts of -the United States. This claim is founded on the provisions of the act of Congress of 1789 (1 Statutes at Large, 76, § 9 ; see U. S. R. S. § 711), which declares, that the jurisdiction vested in the courts of the United States, in suits for-penalties and forfeitures incurred under the laws of the United States, shall be exclusive of the courts of the several states.
If the question of jurisdiction depended for its solution on this provision alone, the position contended for would seem to be well founded. But since its enactment, Congress has, in many instances, professed in direct terms to- *236 ■invest state tribunals with power to enforce penalties incurred exclusively in. the violation of the laws of the United States. Claflin v. Houseman, 93 U. S. 130. By section 57, of said national banking act, it was provided, “ that suits, actions, and proceedings, against any association, under this act, may be had in any circuit, district, or territorial court of the United States, held within the district in which such association may be established; or in any state, county, or municipal court in'the county or city in which such association is located, having jurisdiction in similar cases.”
By this provision, the impediment to the exercise of Jurisdiction by the state tribunals, created by the act of 1789, was removed, and the consent of Congress expressly given to the exercise of jurisdiction by the state-courts, if ■competent to receive it, concurrent with that of the federal courts, in suits, actions, and proceedings arising under the banking act. Whether the same assent was given by § 8, it is unnecessary to consider. But, it is said, if it be held to have been the purpose of Congress to clothe the judicial •tribunals of the states with jurisdiction to hear and determine causes arising under the banking act, that there still remains, lying back of the fact of jurisdiction and upon which ■the fact depends, the question of capacity or power to take. And many cases are cited, affirming the incapacity of state ■courts to receive and exercise jurisdiction to enforce a forfeiture or penalty imposed for a violation of the laws of the United States. But the doctrine of these cases has been repeatedly disapproved and rejected. Gilman v. Philadelphia, 3 Wall, 713; Ex parte Niel, 13 Wall, 240, and Claflin v. Houseman, supra.
In the case last cited, it was held, that the statutes of the United States are as much the law of the land in any state, •as are those of the state, and although exclusive jurisdiction may be given to the federal courts, yet wffiere it is not so given, either expressly or by necessary implication, the state courts, having competent jurisdiction in other respects, imay be resorted to.
In delivering the opinion in that case, Mr. Justice Brad *237 ley says: “ Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights, and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under state laws, may be prosecuted in the state-courts, and also, if the parties reside in different states, in the federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be-prosecuted in the United States courts, or in the state courts competent to decide rights of the like character’ and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it see fit, give to the federal courts exclusive jurisdiction. See remarks of Mr. Justice Eield, in The Moses Taylor, 4 Wall, 429; and Story, J., in Martin v. Hunter's Lessee, 1 Wheat. 334; and Mr. Justice Swayne, in Ex parte Niel, 13 Wall, 238. This jurisdiction is sometimes-exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, ■there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state, court.” See also Bank of Bethel v. Pahquioque Bank, 14 Wall. 383; Farmers’ and Mechanics’ National Bank v. Dearing, 91 U. S. 34.
These cases resolve the question of jurisdiction to enforce the forfeiture, against the plaintiff, and fully settle the right of the state tribunals to entertain the action to recover the-penalty given by the act of Congress, if competent by their-own constitution to hear and determine like questions or causes arising under state laws.
It is urged, in the second place, that the court below wrongfully entertained the cross-action of the defendants to recover the penalty, the principal action being brought by a receiver and not by the bank; that, the act of Congress authorizing actions to be brought in state courts under the- *238 banking act limits the right to actions against the bank, and that the alleged set-off, if available in an action by the bank, is not, and can not be made, available in an action brought by a receiver appointed by the Controller of the currency to wind up its affairs.
This objection is not well founded. “When cross-demands have existed between persons, under such circumstances, that if one had brought an action against the other a counterclaim or set-off’ could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other, but the two demauds must be deemed compensated so far as they equal each other.” Civil Code, § 99. The receiver holds to the bank and its creditors the relation, substantially, of a statutory assignee. A right of set-off’, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank’s insolvency. He succeeds only to the rights of the bank existing at the time it goes into liquidation. American Bank v. Wall, 56 Me. 167; Miller v. Receiver of Franklin Bank, 1 Paige, 444; Colt v. Brown, 12 Gray, 233.
This question, however, is relieved of importance in the present controversy by the disposition made of the question relating to set-off. Was the cause of action to recover back twice the interest paid, one arising upon contract within the meaning of that term as employed in § 97 of the Code •of Civil Procedure ?
That section is as follows : “ A set-off can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract or ascertained by the decision of the court.”
The action to enforce the forfeiture was, by the act authorizing it, denominated “an action of debt.”
By the Revised Statutes, § 5198, it is now denominated “ an action in the nature of an action of debt.” In the division of forms of actions at common law into actions ex contractu, and ex delicto, debt was included in the former class; and, therefore, it is contended that an action of debt is an action necessarily arising upon contract. But this *239 does not follow. Debt was almost uniformly the remedy on statutes, either at the suit of the party aggrieved or of a common informer, and in many actions confessedly not sounding in contract. 1 Chitty Pl. 125-8 et seq.; C. and A. R. R. Co. v. Howard, 38 Ill. 414.
It is quite manifest-, in the case at bar, that there was no express promise by the bank to pay back any part of the interest received. That express assent was given to pay double the interest is not pretended. If, therefore, a contract or promise exists at all, it is because the law implies it from the circumstances, or imperatively presumes it from the relation shown between the parties. Hertzog v. Hertzog, 29 Penn. St. 465; 2 Gr. Ev., § 102.
It is not denied that there is a large class of contracts which rest merely on construction of law, and in which there is, strictly speaking, no agreement of the parties to the terms by which they are bound. 1 Chitty on Con. 79.
But it is said in Metcalf on Contracts, 5, that, “ in sound sense, divested of fiction and technicality, the only true ground on which an action upon what is called an implied contract can be maintained is that of justice, duty and legal obligation and it is further said, as an instance of the application of the rule, that “if one has another’s money, which in equity and good conscience he ought to restore, the law is said to imply a promise to restore it.” Ibid.
In many of the states and in England, a borrower having paid usurious interest, can maintain an action to recover it back. The cases holding, that such action is founded on an implied promise of the lender to restore the sum illegally exacted. The principle asserted is, that title to the excess of interest paid never vested in the lender. And having another’s money, which he ought in equity to restore, an action for money had and received will lie to recover it. Williar v. Baltimore Butchers’ Loan Association, 45 Md. 546; Wheelock v. Lee, 64 N. Y. 242; Thomas v. Shoemaker, 6 W. & S. 179; Ewing v. Griswold, 43 Vt. 400; Basanquette v. Dashwood, Cas. Temp. Talbot, 38; Walker v. Chapman, Loft. 342; Jones v. Barkley, Doug. 696; Brown *240 ing v. Morris, Cowp. 792; Williams v. Hedley, 8 East. 377.
It is claimed that these cases, in principle, settle the question, that the several causes of action interposed below, asset-offs, respectively arise upon contract. ' But it is quite obvious that they do uot have the effect contended for.
In the first place, the rule thus recognized does not go to the extent claimed, and secondly, it does not prevail in this, state. Shelton v. Gill, 11 Ohio, 417; Commercial Bank of Cincinnati v. Reed, Id. 498; Baggs v. Loudenback, 12 Ohio, 153; Spalding v. The Bank of Muskingum, Id. 545; Rains v. Scott, 13 Ohio, 107; Graham v. Cooper, 17 Ohio, 605. Whether well or ill-founded,-the rule is firmly settled, that the party paying is in pari delicto with the party receiving, and hence is denied an action at common law to recover back the interest paid in excess of the legal rate.
It may be said, that the rule denying the action in such-case does not go to the extent of denying the existence of a cause of action arising upon contract, in favor of the borrower against the .lender, but that it merely affects or cuts off the remedy as a punishment of the borrower for-participating in the illegal transaction. But if we grant this, the proposition can not be successfully maintained upon any sound principle, nor' is it sanctioned by any authority known to us, that an action upon -a statute for twice the entire interest paid is an action arising upon contract. No one of the cases above cited sustains or sup-' ports the alleged right to recover upon a promise, implied in law, more than the amount paid in excess of the legal rate. They rest upon the ground that such excess is the money of the borrower in the hands of the lender; but that the borrower’s equity, which gives rise to the implication of a promise, is fully satisfied when that sum is restored to him, which was wrongfully taken from him, is clearly deducible from the principle adjudged.
The original act of February, 1863 (12 U. S. Stat. 678, § 46), in case illegal interest was taken, or reserved, forfeited the entire debt. The act of 1864 reduced the sum to be forfeited to- double tbe interest received. Both pro *241 visions were penal, differing only in the sum declared forfeited. Numerous decided cases hold, that the repeal of a statute creating a penalty or forfeiture, takes away the right to enforce it. Oriental Bank v. Freeze, 6 Shep. (Me.) 109; Eaton v. Graham, 11 Ill. 619; Sumner v. Cummings, 23 Vt. 427; Washburn v. Franklin, 35 Barb. 599; Engel v. Shurtz, 1 Mich. 150; Cummings v. Chandler, 26 Me. 453.
That this would not be the result from a repeal of the statute creating the liability, if the cause of action arose upon contract, is established by a like uniform current of authority. Williar v. Baltimore Butchers’ Loan Association, 45 Md. 546; Dash v. VanKleck, 7 John. 477; Wright v. Hawkins, 28 Texas, 452.
The principle is clearly illustrated in Williar v. Baltimore Butchers’ Loan Association. The plaintiff brought an action to recover back usurious interest paid, the statute declaring that a person contracting for usury should forfeit the excess above the legal rate. While the action was pending, an act was passed by the legislature taking away the right of action for usury in all cases, where the same had been paid. It was contended by the defendant, that this act took away the right of the pending action; but the court held that the plaintiff’s right in such cause of action was a vested one, which the legislature was wholly incompetent to take away. The decision was placed on the ground that the excess of interest which the act first mentioned authorized to be recovered back, was not a forfeiture or penalty, but was money belonging to the plaintiff', in the hands of the defendant, the right to recover which existed independently of the statute, and could not be impaired or affected by its repeal. “ A vested right of action is property in the same sense in which tangible things are property, and is equally protected from arbitrary interference. Where it springs from contract, or from the principles of the common law, it is not competent for the legislature to take it away.” Cooley’s Const. Lim. 362, and note.
In Oriental Bank v. Freeze, supra, it is said: “ Where a party, by statute provisions, becomes entitled to recover a *242 judgment, in the nature of a penalty, for a sum greater than that which is justly due to him, the right.to the amount 'which may he recovered, does not become vested until after judgment.” In Lucas v. Government National Bank, 78 Penn. St. 228, a case quite nearly in point, where the penalty given by the act creating it was sought to be used as a set-off, the court say: “ Technically the latter part of the affidavit of defense is bad, for it claims as a set-off, that which the act of Congress imposes as a penalty on the usurious transaction, to wit, double the amount of the interest paid. In this the defendants had no such interest as would enable them to use it by way of defalcation, for it could be acquired only through an action of debt under the statute, and until the forfeiture was pronounced in their favor, by judgment of the court, they had nothing therein which would be the subject of set-off.” To the same effect is Overholt v. National Bank of Mt. Pleasant, 82 Penn. St. 490. In Bank of Chambersburg v. Commonwealth, 2 Grant, 384, it was held that “ a penalty for breach of a statute is not, when sued for, within the defalcation acts, nor subject to any manner of set-off.”' Without pursuing the subject .further, in our opinion the court properly adjudged the interest reserved on the bill in suit forfeited, and improperly .held that the penalty imposed by the act of Congress for .receiving usurious interest on other and independent loans, .was available as a set-off.
Judgment reversed, demurrer sustained, and judgment for the plaintiff.