# Watkins *versus* Workingmens' Building and Loan Association of Hyde Park.

1. In an action by a building association upon a judgment note given by one of its members, where the defence is payment, the burden of proof that the association has matured is on the defendant.

2. Where in such an action, it appeared that the association had passed a resolution permitting members who were debtors to cancel their obligations by paying their monthly dues in advance a certain number of months, and also all arrears, of which permission it appeared defendant had not availed himself: *Held*, that he could not derive any benefit or advantage from said resolution.

3. The passage of such a resolution will not be deemed to constitute an alteration by the association of the par value of its stock, but to be based merely on the supposition that at the expiration of the number of months for which permission was given to pay in advance, the stock would at any rate have been wholly paid up and the association reached maturity.

4. Where in an action by a building association against a member for an amount borrowed by him from the association, for which amount the association holds the defendant's shares therein as collateral security, the defendant having defaulted in the payment both of premiums and interest on his loan, seeks to apply the value of his stock on account of his indebtedness, he will be entitled to credit only for the amount paid in by him on account of the said stock, and not to the value of the stock at the time of the trial.

5. Evidence as to the market value of the shares, of the amount of the assets of the association as affecting said value, or as to the number of members who, having defaulted in payment of premiums, have increased the value of the capital stock by failing to reclaim the premiums already paid by them, and rendering their stock liable to forfeiture, when offered by the defendant in such case, is therefore wholly irrelevant and should be excluded.

[Watkins v. Building and Loan Association.]

6. A defendant thus seeking to set off the value of his stock held in pledge as aforesaid, is not a withdrawing member within the terms of the Act of April 12th 1859, Pamph. L. 544, and is therefore, not entitled to the privileges conferred by said act.

7. Where stock is by the terms of the charter or by-laws of the association forfeitable for any cause, it will not be deemed as having been forfeited until action to that effect is taken by the corporation.

8. Where a jury in addition to their verdict find matter which is merely surplusage, the court is justified in disregarding the surplusage and entering judgment on the verdict.

9. Where the debtor of a building association, being sued for the amount of his debt, is allowed credit for the amount of the premiums already paid by him upon his stock, said stock having been transferred to the association as collateral security for the debt, the law will regard the transaction as a virtual extinguishment of the stock.

10. North American Building Association v. Sutton, 11 Casey 463, followed and approved.

March 29th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Lackawanna county* : Of July Term 1880. No. 95.

Feigned issue, wherein The Workingmens' Building and Loan Association of Hyde Park, was plaintiff and Thomas T. Watkins was defendant, to determine the amount due upon a judgment entered in favor of the plaintiff upon a judgment-note given by the defendant for $800, waiving inquisition, &c., which judgment was opened by the court and the defendant let into a defence.

It was agreed, by writing filed, that the note should stand as a declaration, and that the defendant's pleas should be *nil debet*, payment with leave, defalcation and want of consideration.

The facts, as developed on the trial, before HAND, A. L. J., were as follows : In June 1869, Thomas T. Watkins owned four shares of stock in the said building and loan association, the par value of which at maturity was $200 per share. On June 24th 1869 he bid for and obtained a loan of $800, at a premium of 52 per cent., viz., $416. He received in cash $384, the difference between $800 and $416. For this loan he gave his judgment-note to the association for $800, and at the same time assigned to the association as collateral his four shares of stock. Judgment was entered of record on the note. Watkins paid monthly dues upon his four shares for 87 months, amounting to $376 ; and he paid interest upon the loan during the same period, $348, and thereafter neglected or refused to pay anything more.

At a meeting of the association in January 1875, the stockholders passed the following resolution : " Resolved, That parties who have taken out loans are permitted to cancel their obligations to the association by paying their monthly dues as many months in advance as is sufficient to make the duration of the society 100

[Watkins *v.* Building and Loan Association.]

months, all arrears to be paid in addition." At this time Watkins had paid dues and interest for 72 months.

Prior to the trial, the defendant served on the plaintiffs this notice: " To the Workingmen's Building and Loan Association of Hyde Park: I hereby notify you that I desire you to apply the payments made by me upon four shares of stock of your association, assigned by me to you as collateral security for the loan for which the note in the above case was given, to the payment of said note, and upon your so applying them, you may cancel said stock."

Under this notice, he claimed credit at the trial, for the *value* of his stock at the date of the trial, and called upon the officers of the association, on cross-examination, to show its then value. They replied that as the assets consisted of real estate, judgments, forfeited stock, &c., it was impossible to fix the then value ; that it could only be determined upon a sale of the assets or upon the winding up of the company.

It appeared in evidence that a number of non-borrowing stock-holders had failed for several years to pay their monthly dues, and the defendant claimed that their stock was *ipso facto* forfeited under the by-laws of the association, which provided that non-borrowing stockholders who neglected to pay monthly dues for six months " shall cease to be members of the association," and that unless application be made within six months from the time of such cessation of membership for the repayment of the net amount paid in by them, " such stock to be forfeited to the association." And the defendant claimed that the payments upon such forfeited stock became a source of profit to the association, making its stock worth at least its par value, viz., $200 per share, and as a result thereof his obligation was cancelled. It was stated on the argument that the failure of certain stockholders to continue their monthly pay-ments was caused by a doubt existing as to the validity of the charter of the association, which resulted in litigation, and was settled in the case of the Workingmen's Building and Loan Asso-ciation *v.* Coleman, 8 Norris 428, in which this court decided that the defects of the charter were cured by the Act of May 11th 1874, Purd. Dig. 1851, pl. 60.

The plaintiff presented, inter alia, the following points :

2. That the burden of proof of the maturity of the association, as in other cases where the defence is payment, is upon the defend-ant. Affirmed. (First assignment of error.)

3. That the defendant cannot avail himself at this time of the benefit of the resolution passed by the association to accept advance payments up to 100 or 103 months, since the defendant did not accept or act under them. Affirmed. (Second assignment.)

The defendant presented the following points :

1. If the jury believe from the evidence that the note in this case was given for the sum of $800, being $200 per share upon the

[Watkins v. Building and Loan Association.]

four shares of stock upon which loans were made by the defendant, because that was the par value of the stock per share, and that afterwards the plaintiff duly changed the par value of the stock per share, the principle of the note must be changed proportionately.   Ans. ["We answer this point in the negative  We qualify it as follows: The $800 note is given not solely because that was the par value of the stock, but because the defendant proposed to borrow $800 from the association.  We say to you that the resolution in evidence passed by the plaintiff, did not change the par value, but was based upon the supposition that the value of the stock would reach $200 in either 100 or 103 months, as the resolution contemplates, and if it had, and this defendant had availed himself of the provision granted by that resolution and paid in advance, he would only have to pay to 100 or 103 months, to which the resolution fixed it.  He would have had the benefit of that resolution under his connection with the association.]   (3d assignment.)   There is no evidence that he did that; the evidence is that he did not do it.   This resolution was a very unwise one in our estimation for a regulation governing this association; but with that we have nothing to do in this case.   If parties have suffered by it there may be an accounting hereafter.   Courts will possibly allow parties who have been injured to seek it, but that is a question that does not enter into this case at present."

3. The jury must deduct from the note the worth of the stock assigned to the plaintiff as collateral security for the payment of the same.   Ans. "We have already answered this.   It is a proper point provided the facts of the case warrant it.   But there is no evidence in the case as to what the value of the stock is, consequently the point is not pertinent to the case.   (4th assignment.)

4. In computing the worth of the stock assigned as collateral security for the loan for which the note in this case was given, the collectable assets of the association plaintiff must be divided among the stock of the association.   Ans. "As a rule this is correct law.   There are no facts in this case from which you can make this division."

5. Stockholders not having taken a loan, who have neglected or refused to pay their monthly dues or fines upon their stock for six months, cease to be members of the association, and if they have not made application to the association for the amount paid in by them upon this stock, less fines and forfeitures incurred within six months after they cease to be members, their stock is forfeited to the association.   They are therefore not entitled to any share in the distribution of the assets of the association.   Ans. ["We have already answered this point in the negative during the progress of this case.   We answer it in the negative now.   If by the by-laws of the association parties fail to pay for a certain length of time they forfeit their stock, and if the association act upon it

[Watkins *v.* Building and Loan Association.]

and forfeit the stock, or recognize it as forfeited by an act, then it is forfeited, but if they do not it does not, without other evidence, become forfeited.] (6th assignment). It would be a hard rule to apply to the members of the association, and if we applied it to this member we don't know where he would be in a defence to this case."

The court in the general charge, said:

"And we say to you, under the evidence, the undisputed evidence of the case—of course facts are for you—that a proper calculation, as we understand it, is to take the note of $800, as of the 24th of June 1869, calculate the interest upon that for eighty-seven months down to the time he made the last payment upon the stock, eighty-seven months, then add that interest to the $800, make a principal of it, deduct from that $387 interest which he has paid, which Mr. Clark testified to; after deducting that, calculate the interest on that down to-day for whatever time it is, and from that principal deduct the amount he has paid upon his stock, which the defendant has notified the plaintiff to-day he elects to have applied thereto, to wit, $376; the balance will be a proper verdict for you to render." (7th assignment.)

The eighth assignment of error was as follows:

8. The learned judge erred in rejecting the evidence in answer to the question by defendant's counsel: Upon how many shares of stock unencumbered in your association, have the stockholders neglected or refused to pay dues for more than a year last past? Offered for the purpose of computing how many shares of stock there are at present in the plaintiff association for the purpose of computing the worth of the stock per share, the defendant having given notice that he desires the worth of the stock assigned as collateral security to be applied to the payment of this note.

Ans. "The evidence is rejected. We will permit the defendant to show how many shares are actually forfeited, but cannot admit this testimony because it is not proposed to show that the association did forfeit these shares by a vote of the association."

The ninth assignment, filed at bar, is referred to below.

The jury found the following verdict in writing: "We find for the plaintiff in the sum of $518.84, provided that defendant's four shares of stock in the association (less $376 here credited) is not forfeited."

Before the verdict was recorded the court stated to the jury that under the law and the evidence of the case, there was no forfeiture of stock, and that, therefore, their verdict would be taken for the amount as rendered by them for the plaintiff without the proviso. The clerk then read the verdict as so recorded, to which the jury assented. Afterwards the defendant's counsel asked to have the whole verdict read, which the court allowed to be done.

A motion for a new trial was discharged by the court, HAND, A. L. J., saying in an opinion filed:

[Watkins v. Building and Loan Association.]

"We consider that the real verdict in the case, and the only one, is for the plaintiff for $518.87, and is the proper verdict under the law and evidence of the case. But that defendant's counsel may have the full benefit of the technicality raised, we will pass upon the whole matter read at his request. In view of the testimony adduced by the defendant himself, we consider under the authority of Cavene v. McMichael, 8 S. & R. 441; Fisher v. Kean, 1 Watts 259; Bickham v. Smith, 12 P. F. Smith 45, that the proviso may be treated as surplusage. It shows the ground of the verdict, viz., the allowance of $376, asked by the defendant to be applied to the debt (under his notice) as payment on stock. We consider this notice is equivalent to a surrender of his stock, which we compelled the plaintiff to accept, under the authority of Early's Appeal and Spring Garden Association v. Tradesmen's Loan Association. This is very different from a forfeiture of stock. The testimony nowhere raises that question. It was raised by defendant's counsel as to non-borrowing stock, but even on that question he did not furnish the evidence of a proper calculation, if we had decided it in his favor. There being no question in the case as to forfeiture of defendant's stock, and the verdict showing he was allowed his payments on it by the jury, that part.of the verdict is mere surplusage. The verdict is in exact accordance with the figures proved on the trial, and the calculation is on the same basis as the calculation found in Spring Garden Association v. Tradesmen's Loan Association, 10 Wright 495, and we deem it is exact equity between the parties."

Judgment was thereupon entered on the verdict, and the defendant took this writ of error, assigning for error, the answers to points and portion of the charge, as above set forth.

Counsel for plaintiff in error, by leave of this court, filed at bar an additional assignment of error, that the verdict of the jury, as rendered, is not according to law, and is void.

*Lemuel Amerman* (*Henry E. Hess* with him), for the plaintiff in error.—By the terms of the verdict the association has a judgment against Watkins for $518, and Watkins still has some interest in the stock, which he does not want and cannot be compelled to keep. The verdict is not valid to support the judgment.

The real value of the stock assigned as collateral security is applicable to the payment of the judgment at the election of the shareholders: Early and Lane's Appeal, 8 Norris 411. Whenever the stock matured or became par in value, the note, for the payment of which the stock was assigned as collateral security, would be paid and the borrower's obligations cancelled, notwithstanding the reduction of the par value of the stock by the stockholders by their resolution of January 1875. Watkins's stock was eighty-seven months old, it therefore lacked thirteen months of

being matured, or of the par value as fixed by the resolution making the duration of the society one hundred months. The court should have instructed the jury that Watkins should have paid dues for these thirteen months amounting to $104, which would have satisfied his obligation. It is said the dues were payable monthly in advance. But even if not so paid, it is inequitable that holders should lose the value of their stock.

The burden of proof as to the worth of the stock, or of the maturity of the same, is upon the association as the only party possessed of the means of proof: 1 Whart. on Ev., 2d ed., sect. 367.

The unencumbered stock, on which the holders defaulted, became *ipso facto* forfeited, and, we contend, raised the value of the association stock to par, whereby the association matured. The rule given to the jury to calculate the amount of their verdict was on any theory erroneous

*S. B. Price* (with him *C. R. Pitcher* and *E. B. Sturges*), for the defendant in error.—If a man joins a building association, pays one month's dues and ceases, he will not be entitled, seven or eight years afterwards, to his proportionate value of the stock as represented by the assets. Here Watkins paid eighty-seven months and stopped. He now asks to be credited with the value of the stock, as of one hundred months, less his dues for thirteen months. The trouble is there never can be an ascertainment of such value until the association finally winds up. Under the Act of April 12th 1859, Pamph. L. 544, and in equity, all he is entitled to credit for is what he has actually paid less fines, &c., and that is just what he got in the calculation of the verdict under the instructions of the court. In his notice to us before trial, he only claimed to have his *payments* set off, and his claim to have the *value* of the stock set off was an afterthought: Early and Lane's Appeal, 8 Norris 411; North American Building Association *v.* Sutton, 11 Casey 463.

Mr. Justice PAXSON delivered the opinion of the court, May 2d 1881.

The plaintiff below was a building association. The defendant was a member, and had subscribed to four shares of its stock. The par value of said stock was $200 per share. By the law of the association each member was entitled to borrow $200 for each share of the stock so held by him. The defendant obtained a loan of $800, for which he was to pay a premium of 52 per cent. He received for said loan the sum of $384 in cash, the balance, $416, was the premium at which he bought the loan. To secure the money so borrowed he gave a judgment in the sum of $800, and also as a further security transferred his four shares of stock to the

[Watkins *v.* Building and Loan Association.]

association as collateral. He then continued his payments to the association, as required by its charter, until he had paid $348, as interest on the loan, and the further sum of $376 on account of his stock, when his payments ceased, and the association issued an execution to collect the amount of the judgment. Upon the application of the defendant the court below opened the judgment, and an issue was framed to ascertain the amount due. This writ of error was taken to review the rulings of the court below upon the trial of said issue. A number of assignments of error have been filed by the defendant which will be considered in their order.

1. The court instructed the jury, in answer to the plaintiff's second point, that the burden of proof of the maturity of the association, as in other cases where the defence is payment, is upon the defendant. We are unable to perceive any error in this ruling. The defendant had no reason to complain of it in any event, as there was neither allegation nor proof that his stock had matured.

2. Nor was there error in affirming the plaintiff's third point. It was no defence to the judgment that the association passed a resolution to accept advance payments up to 103 months, as it was not alleged the defendant ever availed himself of the privilege. Had he accepted the offer and made the advance payments required he would have brought his stock to par and thus paid his loan. Instead of doing this he defaulted in his payments, and his rights must be measured from that standpoint.

3. The answer of the learned judge to the defendant's first point was entirely accurate. There was no evidence of a change of the par value of the stock. That remained at $200 per share. The resolution which was referred to as affecting this change, as correctly stated by the court below, was based upon the supposition that the value of the stock would reach $200 in either 100 or 103 months, and it was for this reason the privilege was given to pay up in advance to that time. If the defendant had accepted the offer the par of his stock would not have been changed; it would have been paid up.

4, 5 and 6. These assignments may be considered together. They raise the really important question of the case, viz., was the defendant entitled to deduct from the judgment the value of the stock assigned by him to the association as collateral security, and if so, how was its value to be ascertained? The learned judge conceded the right of the defendant to have the value of the stock deducted, but held that inasmuch as there was no evidence in the case of the value of the stock, the point, as presented, was not pertinent. The defendant further contended that certain shares of stock held by non-borrowers were forfeited for non-payment of dues by the rules of the association, and that the value of this stock should be taken into the estimate of the value of the remain-

der of the shares. The court negatived this claim in its answer to defendant's fifth point.

These rulings, if not strictly accurate, were more favorable to the defendant than he was entitled to. All that he had a right to claim was allowed by the court. Upon the trial below the defendant offered in evidence the following notice :—

" To the Workingmens' Building and Loan Association of Hyde Park : I hereby notify you that I desire you to apply the payments made by me upon four shares of stock of your association assigned by me to you as collateral security for the loan for which the note in the above case was given, to the payment of said note, and upon your so applying them you may cancel said stock.
" (Signed) THOMAS T. WATKINS."

That the defendant had the right to so apply his stock was settled by Early and Lane's Appeal, 8 Norris 411. Nor did the court below deny him this right. Evidence was received showing the extent of his payments, and the precise amount—$376—under the charge of the court, was allowed by the jury as payment pro tanto of the judgment. The defendant was not satisfied with this. He attempted to prove, by the secretary of the association, the actual value of the stock—*i. e.* how much it would be worth to wind up. This information the secretary could not give. He said he did not know the value of the stock; it would depend entirely upon what could be collected upon the judgments held by the association. The failure of this attempt was natural. The secretary had not been notified that such an inquiry would be made, and had not therefore examined his books with reference thereto, while the notice given by the defendant to the company of his intention to apply the stock refers only to the payments thereon.

It needs but a moment's reflection to see that the question of the value of the stock was irrelevant. Its value for the purposes of this case was just what the defendant had paid on account thereof. This was all the defendant claimed to apply on the judgment by his notice before referred to, and it was all the law gave him the right to apply. The value of the stock beyond this consisted mainly of the profits, in which a defaulting borrower has no right to participate. This arises from two causes—1. The peculiar nature of the contract between building associations and their members; and, 2. The difficulty, if not absolute impossibility, of ascertaining the profits until the association is ready to wind up. A venture in a building association is a peculiar investment. It is much to be feared that many persons of slender means embark in such enterprises without a clear understanding of their practical working. The present case furnishes an apt illustration of the results in one class of cases. The defendant received but $384 in cash on his loan. At the end of eighty-seven months, a little over seven years,

[Watkins *v.* Building and Loan Association.]

he had paid into the treasury the sum of $794. He now has a judgment against him in addition for the sum of $518.84. This disastrous result is a legitimate outgrowth of our building-association laws. Yet it is not worse than many other ventures in partnership and other transactions where persons embark in enterprises beyond their means. The loss is not necessarily the fault or result of the law, but of the inability of the defendant to keep his contract with the association. Such investments are profitable or otherwise according to circumstances. Where the association is prudently managed, and is wound up within the prescribed period, it is always profitable to the non-borrowing members. They participate in the premiums which they do not pay. If the association were composed exclusively of non-borrowers there would be no profits; they would get back what they put in, with whatever interest had been earned, less the expenses of the management. If, on the other hand, it were composed exclusively of borrowers, the gain of the individual member would depend upon the amount of his premium. If he had paid less than the average there would be a profit; if he had paid more there would be a loss. Where the association is composed of both classes of members the result to the borrowing member must depend to a great extent upon the relative proportion of the two classes, and upon the amount of premium which he has paid. There are of course other matters which in a minor degree affect the result, but the foregoing are the two cardinal principles which underlie the whole matter. And it is further to be observed that the profits are reserved for those members who continue to the end. For borrowing members, who drop out by the way, there is nothing but disaster.

The defendant dropped out by the way. There is nothing in the charter of the association, nor in his contract to entitle him at this stage to a share of the profits. The law provides for but one such case and that is a withdrawing member. The Act of 12th April 1859, Pamph. L. 544, declares that a withdrawing member, after having given thirty days' notice of such intention, "shall be entitled to receive the amount paid in by him or her, and such proportion of the profits as the by-laws may determine, less all fines and other charges: Provided, that at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of the withdrawing stockholders without the consent of the board of directors, and that no stockholder shall be entitled to withdraw whose stock is held in pledge for security. Upon the death of a stockholder, his or her legal representatives shall be entitled to receive the full amount paid in by him or her, and legal interest thereon, first deducting all charges that may be due on the stock. The provisions of the Act of 29th April 1874, Pamph. L. 96, as to associations incorporated under said act, are not essentially different, excepting that there is no

[*Watkins v. Building and Loan Association.*]

provision that withdrawing stockholders shall be entitled to a share of the profits.

The defendant was not a withdrawing stockholder, nor could he have been so long as his stock was held in pledge. He is not entitled to the rights which the law confers upon such stockholders. Yet his claim far exceeds what the Act of Assembly gives to them. Withdrawing stockholders can only claim of the profits such proportion as may be fixed by the by-laws. Such proportion might readily be fixed by a by-law so as not to work injustice to remaining stockholders. At most it would be an approximation. Here the defendant claims an absolute right to participate in the entire profits up to the hour of the trial of his case. Such right is nowhere to be found. And if it existed, how can it be ascertained with accuracy at this stage of the association's business ? Its assets consist chiefly of judgments for money loaned including some houses which were evidently bought in upon executions. The exact value of the houses can be ascertained only by a sale, and the judgments are worth only what can be realized therefrom. As such loans are made usually upon small margins they cannot be regarded as securities having a fixed value. In view of the fact shown by the evidence that a large number of members had ceased paying up their dues by reason of a supposed defect in the charter of the association, the difficulties of realizing the face of the judgments may be readily appreciated. The ascertainment of the real value of the stock can only be arrived at by closing up the affairs of the corporation. This the defendant has no right to demand. If, as was contended, he was entitled to it in this proceeding, the most that could be done would be to approximate it. The jury, and even the officers of the company might place a much higher value upon the securities than could be realized therefrom. In such case the defaulting member would receive more than the members who paid up to the end. Beside, the profits are composed chiefly of the premiums. They are made up in part of the premium which the defendant agreed to pay. I say agreed to pay, for it is a mistake to suppose, as was claimed by the defendant, that he has paid the premium. He only promised to pay it; it was inserted in the judgment-note, and is now being collected. The building association law expressly authorizes the plaintiff to recover the premium from a defaulting borrower. Yet the defendant's position if sustained would defeat this right in part.

We are of opinion that the right to apply the stock in such a case as this means only the right to apply the payments made thereon. This is all that was decided in Early and Lane's Appeal.

7. We see no error in the portion of the charge referred to in this assignment. It was an instruction to the jury as to the method of arriving at their verdict upon the undisputed facts of the case. The ruling was fully warranted.

[Watkins v. Building and Loan Association.]

8. This assignment is practically covered by what has been already said. It was not error to reject the evidence for the reason that the inquiry to which it referred was irrelevant. Aside from this the stock of the defaulting members could not be forfeited in this summary way by a jury. That could only be done by the association. When stock is in default by the charter or by-laws of a corporation, it may not be forfeited without action on the part of the corporation itself. *Non constat* that it will enforce such right, but may allow the defaulting member a day of grace.

We allowed an assignment to be filed at bar to the form of the verdict. As rendered it was: " We find for the plaintiff in the sum of $514.84, provided that the defendant's four shares of stock in the association (less $376 here credited) is not forfeited." The court below struck out the clause referring to the stock, and entered judgment on the verdict for $514.84. We have no doubt of the power of the court to so mould the verdict. It is fully warranted by the rulings in Cavene v. McMichael, 8 S. & R. 441; Fisher v. Kean 1 Watts 259; and Bickham v. Smith, 12 P. F. Smith 45. That portion of the verdict referring to the stock was surplusage. Moreover it was erroneous. For how could the defendant possibly have a credit for the stock and yet retain it? The learned judge correctly held that there was no question of the forfeiture of the stock before the jury. The allowance of a credit therefore upon the judgment compelled the plaintiff to accept the stock *nolens volens.* The legal effect was its extinguishment. This is fully sustained by the reasoning of the court in North American Building Association v. Sutton, 11 Casey 463.

We find no error in this record.

Judgment affirmed.

SHARSWOOD, C. J., and GORDON and TRUNKEY, JJ., dissented.