## RACHEL E. STEWART et al. *vs.* THE WORKING-MEN'S BUILDING AND LOAN ASSOCIATION OF ANNAPOLIS.

*Building Associations—Weekly Payment of Interest and Dues not Usur-ious—Entrance Fee and Fines—Accounting Between Association and Borrowing Member.*

A mortgage to a building association by a member to secure a loan made on his shares of stock is not rendered illegal or usurious because interest on the loan is payable weekly, or because fines are imposed for neglect to pay dues and interest. Code, Art. 23, secs 125, 130, authorizes building associations to make such charges.

When the constitution of a building association provides that a borrowing member shall pay a certain sum per week on each share until the amount so paid in, together with profits credited on the shares, shall amount to their par value, such member is entitled to be credited with profits, although in default as to payment of dues, interest and fines.

The entrance fee and the fee on making subscription to shares, required of each member by the constitution of a building association, are not to be credited on part payment of the sum loaned to a member, when the constitution also provides that the shares are to be redeemed by weekly payment of dues and credited profits.

Weekly dues and interest payable by a borrowing member of a building association constitute but one debt and fines cannot be imposed for every week the interest remains unpaid.

The constitution of a building association fixed the value of each share at $130, to be paid in weekly installments of 35 cents, until these dues and the profits credited on the share semi-annually should amount to $130. It was also provided that a member offering satisfactory security should be entitled to an advance of $130 on each of his shares and that he should be charged with interest on the amount advanced at the rate of six per cent. which interest he could pay in weekly installments, in addition to the regular weekly dues, such payments to continue until the weekly dues paid and the credited profits amount to the par value of the shares. A member of the association subscribed for five shares of stock, received a loan thereon of the par value, $650, and executed a mortgage of land conditioned for the payment of interest, weekly dues and fines and penalties, the mortgage being in conformity with the constitution. Under this mortgage the borrower was required to pay 15 cents a week on each share, which was interest at the legal rate of six

per cent on the amount of the loan, and 35 cents a week on each share until these amounts, together with the profits, amounted to $130, when the share would be redeemed. The borrower being in default as to these payments, the mortgage was foreclosed. Upon exceptions to an auditor's account distributing the proceeds of sale, *held*, that the mortgage is not usurious and is such as is authorized under Code Art. 23, sec. 125.

*Held*, further, that the borrower is entitled to have deducted from the mortgage debt the amount paid in as weekly dues on the shares and also any profits credited thereon and is liable for the balance together with unpaid interest and such reasonable fines for non-payment of dues as were charged under the by-laws.

*Held*, further, that a tender made by the borrower to settle the debt when the amount tendered was calculated upon the theory that mortgagor was simply a borrower and not liable as a member was properly rejected.

*Decided November 15th, 1907.*

Appeal from the Circuit Court for Anne Arundel County (ROGERS, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*James W. Owens*, for the appellant.

*Frank H. Stockett*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Anne Arundel County as a Court of equity, overruling exceptions to the ratification of a sale of mortgaged premises, made under a power of sale contained in the mortgage. This mortgage was made September 20th, 1898, by Rachel E. Stewart and her husband to "The Workingmen's Building and Loan Association of Annapolis, Anne Arundel County, Maryland," (which will hereafter be designated The Association), a body corporate under the laws of Maryland, to secure an advance made to said Rachel E. Stewart as the holder of certain stock in said Association. It recites that she was at that date a member of the Association, and the holder of five shares of its

unredeemed stock, and that she had received from the Asso-
ciation an advance of $650, "being the full par value of said
five shares of stock when fully paid up and completed, in the
contemplation of the object and purposes of said Association
* * * in accordance with its present constitution." The
mortgagors covenanted therein as follows: "to pay to the
mortgagee or its assigns, on the principal sum, the weekly sum
of one dollar and seventy-five cents (being thirty-five cents on
each share) on every Saturday night in each week, for the
period of ten years from the date hereof, or until the aggre-
gate of said weekly payments so made, *together with the said
shareholder's accredited dividend of the profits of said Association,*
shall, exclusive of all losses and liabilities, and fines and pen-
alties imposed, amount to the said advanced sum of $650, and
to pay as interest on said advanced sum, on every Saturday night
during said period the further weekly sum of fifteen cents on
each of said shares of stock, the said weekly interest of fifteen
cents ceasing on each share only when the par value thereof
($130) clear of all losses and liabilities, fines and penalties,
shall have been repaid."

They also covenanted to pay all ground rent, taxes and as-
sessments of all kinds upon the mortgaged property, and all
fines and penalties imposed upon the said Rachel E. Stewart
in accordance with the constitution of the Association, and to
insure the buildings on the mortgaged premises to the amount
of at least $500 for the protection of the mortgagee.

The power of sale in event of default in the performance of
any of the covenants was in the form commonly used in such
mortgages, except that it provided for a fee of $40 to the at-
torney named in the mortgage or other party making sale
thereunder, "in lieu of the commissions usually allowed."

Default was made by Mrs. Stewart, and on February 2nd,
1907, the mortgaged premises, after due advertisement, were
sold by the attorney named therein, for $975, and the sale
was duly reported to the Court for ratification, the amount
claimed by the mortgagee up to the day of sale being $680,
besides costs and commissions to be added, as appears from
mortgagee's account A set out in the record.

The exceptions of Mrs. Stewart allege that on the day of sale, and before the sale began, she tendered in legal currency both to the attorney making the sale, and to the president of said association, the sum of $605.15, being, as she alleges, the full amount properly due upon said mortgage, including all costs and commissions, but that the tender was refused, and she filed with said exceptions a statement or account showing how said amount was reached, which is set out in the record and is designated Exhibit R. E. S. No. 4. This account alleges the total amount due on the mortgage to be $539.21, but she tendered $550 to cover any possible error in calculation, and added for costs as stated in the exceptions, $55.15, making the total tender $605.15. The exceptions allege that the claim of the association was "fraudulent, usurious, oppressive, contrary to law, and null and void," and prayed the Court "(a) to set aside said sale; or (b) to refer the papers in the proceedings to a special auditor to be appointed by the Court, to state the accounts between your petitioner and the said association, and report the same to this Court for its final action thereon." The solicitor for the exceptant being the regular auditor of the Court, the papers were by order of the Court referred to a special auditor to state an account and report the same to the Court with leave to take such testimony as he should think proper.

An agreed statement of facts was filed by the parties, from which it appears that the said association has "continually, at stated periods since 1898, declared dividends and paid the same or credited the same to the parties entitled thereto on all matured stock, and on the stock of the non-borrowing members," but "that no dividend has ever been paid Rachel E. Stewart on account of her payments to the said association." It was also admitted that the tender was made and refused as alleged, and that the items composing the tender were as alleged in the exceptions, and that the statement filed and designated R. E. S. No. 4, "shows fully all payments made by her during the existence of the mortgage," and that no certificate for said five shares of stock was ever delivered

to her by the association; also that the statement filed by the
association, and designated Mortgagors Account A, was a cor-
rect statement of her ledger account, so far as the same pro-
fesses to give her payments and the charges against her.

The special auditor reported that he had taken no testimony
because counsel had agreed that the statements filed by the
contending parties were arithmetically correct; that he had ex-
amined each of them, and had found them to be arithmetically
correct, and therefore submitted them both to the Court for
its action, and the Court thereupon ordered "that the excep-
tions filed by Rachel E. Stewart, be and the same are hereby
overruled, and that Mortgagees Account A filed March 9th,
1907, be and the same is hereby finally ratified, and that the
exceptant pay the costs." The appellants account is made up
on the theory that the transaction between the parties is usu-
rious, and in violation of the law regulating advances by build-
ing associations to their members, and that in consequence,
the relation between these parties is that of borrower and lender,
and that the mortgage indebtedness is to be settled accordingly.

The account of the appellee, on the other hand, is made up
on the theory that the transaction is in strict accord with all
the requirements of the law regulating such advances; and
that the amount due upon the mortgage is to be ascertained
by the application of the rule established by this Court in *Oak
Cottage Building Association* v. *Eastman and Rogers*, 31 Md.
556. In that case, Eastman and Rogers having received an
advance from the association upon certain shares of stock,
availed themselves about a year later of the privilege secured
to them by the constitution of the association, of redeeming
the property mortgaged, by repaying the money due the as-
sociation, and paid it the sum exacted by it. They then
brought suit to recover an alleged excess so exacted, this
being before the passage of the Act of 1876, ch. 358, which
provides that usury shall not be a cause of action in any case
where the evidence of indebtedness has been redeemed or set-
tled for by the obligor, in money or other valuable considera-
tion, except that of a renewal in whole or in part of the orig-

inal indebtedness. The constitution of that association provided that any member having taken a loan might obtain a release of his mortgage by paying back the difference between the dues he had paid in and the amount borrowed, together with a *bonus* on each share, determined by the period during which the association had been in operation, and his proportion of losses sustained by the association during his membership, and the Court said, "the rule laid down is a very simple one; to deduct the amount of dues paid in from the amount borrowed and to add the *bonus;* this ascertains the amount to be paid," there being in that case no evidence of any losses sustained by the association.

We can discover nothing in the constitution of the association in this case, so far as it is set out in the record, nor in the transaction thereunder, which would warrant us in converting the relation of the parties into that of borrower and lender, and in settling the mortgage indebtedness accordingly, and it therefore follows that the tender made by the appellant could not operate to prevent the ratification of the sale, and the tender was properly rejected by the association. The constitution of the association fixes the number of shares of stock at 5,000, and the par value of each share at $130, to be paid in weekly installments of thirty-five cents each, "until the combined weekly payments and profits (credited every six months, or as hereinafter provided) shall amount to $130 per share. * * * In the case of redeemed shares paid up by installments and *dividends of profits* according to this Article (No. 2), the mortgaged property shall be released, and the party shall *cease to be a member* by virtue of such redeemed shares. The profits of the association shall be divided and credited semi-annually *pro rata,* and the dividends on paid up shares, at the same time shall be paid in cash." ·

· Art. 11, sec. 1, provides that every member will be entitled to an "Advance or redemption money amounting to $130 for each unredeemed share, provided he offers satisfactory security for the repayment of the same together with the interest, fines, and penalties as herein provided for." Sec. 2 provides that

"each member upon being awarded redemption money, shall be charged interest thereon at the rate of six per cent per annum to be paid in advance, but if such member prefer, for his own convenience, he may pay the interest in weekly installments, at the time of paying, and in addition to his regular weekly dues, in which event the payment of the interest, in weekly installments on the whole amount at the said rate shall continue without rebate until the payment of weekly dues *and the credited profits* shall amount in the aggregate to the full value of one share of stock, $130, when the interest and dividends on that amount shall thenceforth cease." Section 5 of Art. 11 provides that if any member whose property has been mortgaged to the association makes default in any of his covenants, and such default shall continue for three months, the property may be sold, and the proceeds shall be applied; "1st, to pay all expenses of sale, arrears of ground rent (if any) taxes, assessments, &c. 2nd, to pay all arrears due the association by such member, and such sums as will be sufficient to liquidate all future payments of dues and interest on the shares redeemed, and the balance, if any, shall be paid to the member, or to his or her legal representatives. Such delinquent's membership shall then cease with reference to the shares redeemed on the mortgage foreclosed."

Art. 12, sec. 3, provides *a different mode of settlement* where a member of whose property has been mortgaged to the association desires to obtain a release of his mortgage before his shares are paid up, in which case he must pay to the association "the difference between the installments of dues paid, and the amount borrowed, together with a bonus of six dollars upon each redeemed share" and his proportion of losses incurred during the period through which such shares have run.

Art. 14 provides that each member shall pay a fine of ten cents per share for each failure or neglect to pay any and each of the said weekly dues and installments as they become payable.

It will be seen by reference to the covenants of the mortgage hereinbefore recited that it conforms strictly to the con-

stitution, and a simple calculation will show that the weekly payment of fifteen cents as interest on each share, amounts to exactly six per cent per annum upon the par value of each share of $130, which amount was advanced to the mortgagors without premium paid, or deduction of any sort.

Under that arrangement, if Mrs. Stewart had performed her covenants, she would have paid precisely the same amount to the association for the use of this $650, that she would have paid at the legal rate of interest to any individual from whom she might have procured it, and the transaction is not rendered usurious either by reason of the weekly payment of interest, or by reason of fines imposed for neglect to pay dues and interest as they accrue, weekly payments of interest, and reasonable fines for neglect to pay dues and interest, being expressly authorized by sections 125 and 130 of Art. 23 of the Code of 1904. There is nothing usurious or oppressive in this transaction, and no want of mutuality. Every member stands upon the same footing, and every weekly payment of dues and interest by each member, and every fine imposed and paid for default in such payments of dues and interest, enures to the common benefit of every member in the earlier maturing of the stock.

We are of the opinion that the account ratified by the Court is stated upon correct principles, in all respects except one.

It appears from the agreement before referred to, that while dividends have been regularly declared and paid at stated intervals on the stock of non-borrowing members that no dividend has ever been paid or credited to Mrs. Stewart. The counsel of the Association in his brief argued that as she was in default from the beginning and was liable to fines, she could not therefore receive profits, and in support of this contention he cites sec. 149 of *Endlich on Building Associations* which does apparently sustain that view. But the same author in sec. 132, qualifies and explains that broad statement, saying, "borrowing members are to be credited only with their actual payments, and not with any profits thereon, *unless special statutory enactments, or the rules of the society allow him some share of profits*" and he refers for this to *Watkins* v. *Workingmen's Building Association*, 97 Pa. 523.

In the present case, the constitution expressly so provides, and the mortgage so stipulates.   In order to have these profits allowed it will be necessary to reverse so much of the order as ratifies Account A, and to remand the case to the auditor to take proof as to the dividends of profits to be allowed.

Section 1 of Art. 2 requires each member to pay an entrance fee of one dollar and an additional fee of fifty cents per share for each share subscribed, and some question was raised whether this should be credited as a payment on the advance of $650, but we do not think it should be so credited, since the same section expressly provides that the weekly dues shall continue to be paid *until the combined weekly payments and profits* shall amount to $130 per share.   Entrance fees are in no way connected, under the provisions of the constitution, with the subject of advances, and they enure to the benefit of all the members by swelling the funds of the Association and thereby increasing the profits for distribution.

It is the settled rule that weekly dues and interest constitute but one debt, and that an additional fine cannot be imposed for every week the weekly installment remains unpaid, *Shannon* v. *Howard Association*, 36 Md. 383.   We assume that this rule has been observed in this case, but if violated by Account A, the error can be corrected in restating the account.

The order ratifying Account A will be reversed for the reasons stated, but since it cannot be determined, until the proper dividends are ascertained and credited to the appellee, whether the amount due on the mortgage will be brought within the amount tendered, the cause will be remanded without ratifying or setting aside the sale made, that the special auditor may state an account in conformity with these views.

> *Order affirmed in part and reversed in part and cause remanded for further proceedings in conformity with this opinion.   The costs below to be paid by the appellant; the costs on this appeal to be paid by the parties equally.*