## LIZZIE O'SULLIVAN *vs.* TRADERS' AND MECHANICS' PERMANENT SAVINGS ASSOCIATION.

*Building Associations—Provision for Weekly Payment of Dues and Interest—Accounts.*

When a shareholder in a mutual building association executes to it a mortgage to secure a loan amounting to the par value of his shares, and covenants to pay each week legal interest on the sum borrowed together with weekly dues as a member until the weekly dues together with the dividends or profits to which his shares may be entitled shall

·have fully paid up the shares, the stipulation for the payment of weekly dues as well as interest on the loan weekly does not render the transaction usurious.

An exception to an auditor's report stating an account between a building association and a borrowing member on the ground that the account is not stated in accordance with the decisions of the Court of Appeals is too vague.

When a building association as mortgagee, after making advertisement of a sale of the mortgaged property for a default, withdraws the sale upon payment by the mortgagor of the costs incurred in advertising the mortgagor member is not subsequently, upon a statement of the account, entitled to a credit for the sum so paid.

`Decided December 6th, 1907.`

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

F. A. Buschman, for the appellant, submitted the cause on his brief.

Julius H. Wyman (with whom was John L. V. Murphy on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court No. 2, of Baltimore City, dissolving an injunction granted to restrain a sale of mortgaged premises, and ratifying the report and account of an auditor made to ascertain the correct amount due on the mortgage.

The mortgage was made by the appellant to the appellee August 9th, 1895, and it appears therefrom that Mrs. O'Sullivan, being the holder of twenty-eight shares of the stock of the appellee, each of the par value of one hundred and four dollars when fully paid up and completed, received from the appellee on August 9th, 1895, an advance of two thousand nine hundred and twelve dollars, being the full par value of said twenty-eight shares of stock when fully paid up

and completed, and executed the mortgage mentioned in accordance with the constitution of the appellee.

The covenants of the mortgage necessary to be stated are as follows:

1st. To pay every week, commencing on the date of said mortgage, the sum of twenty-five cents on each of said twenty-eight shares of stock.

2nd. To pay every week, commencing as aforesaid, twelve cents on each of said twenty-eight shares of stock as interest for the said advance made thereon.

3rd. To pay all ground rent, water rent, taxes, and assessments for which the said mortgaged property or mortgage debt should become liable, when payable.

4th. To pay all fines imposed on her in accordance with the constitution of the appellee, and to keep the improvements on the mortgaged premises insured from loss by fire, for the use of the appellee to such an amount, not exceeding the said advance as the appellee should require.

The mortgage then proceeded as follows: "All of which payments shall remain in force until the weekly dues aforesaid, and the *pro rata* dividends of profits of said body corporate to which said shares shall be entitled, shall have fully paid up and completed said shares of stock, and the proportionate part of any loss said body corporate may sustain before the completion of said shares as aforesaid, and in case of any default being made in any of the covenants or conditions of this mortgage, then the whole mortgage claim hereby secured as ascertainable under the provisions of said constitution and by-laws, shall be due and payable." The mortgage also contained the consent for a decree of sale under the provisions of the local law of Baltimore City.

In September, 1901, default having been made by the nonpayment of dues, interest, ground rent and taxes, a decree for sale was passed on September 5th, 1901.

Notwithstanding this decree, the appellant succeeded in inducing the appellee to withhold sale or advertisement until sometime in 1906, although it appears from the auditor's ac-

count and report that in the meantime nearly every installment, of ground rent, and nearly every year's taxes as they became due and payable, were paid by the appellee. In July, 1906, the appellee apparently feeling that forbearance had ceased to be a virtue, advertised the property to be sold under said decree on August 23rd, when the appellant succeeded in inducing the appellee to withdraw the sale, she then paying the sum of $170.50 being the costs actually incurred in advertising said sale.

On September 20th, 1906, Mrs. O'Sullivan filed her petition in Circuit Court No. 2, setting forth the proceedings up to the decree of September 5th, 1901, and alleging that since said date and until May 23rd, 1906, she had paid her weekly dues, but not alluding to her failure to pay the ground rent and taxes as they matured; also alleging the payment by her of said sum of $170.50, as expenses of advertisement in order to have the sale withdrawn. The petition further alleged that on or about May 23rd, 1906, she received from the appellee a statement of claim, Plffs. Exhibit No. 2, showing a balance then claimed to be due on said mortgage of $1,372, and a notice that unless the same was paid on or before September 20th, 1906, sale would be made under said decree; that she could show by proper proof that her total indebtedness under said mortgage was $880, and that the excess was caused by overcharges of interest illegally made against her; that she desired to pay off the amount justly due by her, but was unable to do so by reason of said illegal claim, and she prayed to be allowed to pay into Court such sum as may be deemed right; that in the meantime the appellee should be restrained from making sale; that the appellee should answer the petition; and that the amount justly due under the mortgage should be judicially determined.

The appellee answered this petition on September 29th, 1906. It denies the payment of the weekly dues since the decree of 1901; it denies that the appellee agreed to withdraw the sale upon payment of the costs of advertisement, and alleges that the appellant also then agreed to pay forthwith,

the amount due as claimed by the appellee, through her at-
torney Thomas W. Griffin, who represented a building associa-
tion, and had agreed to furnish the amount; that up to that
time there had been no dispute as to the correctness of the
appellee's statement of the claim, and that Mrs. O'Sullivan had
attempted through various lawyers to raise the amount of said
claim but had been unable to do so; and the appellee moved
for the dissolution of the injunction which had been granted,
and prayed that the petition be dismissed.

On October 17th, 1906, the Court passed an order author-
izing the appellant to pay to the appellee the sum of $880 ad-
mitted to be due on the mortgage, which was accordingly
paid and the case referred to the auditor to determine the
amount due on the mortgage.

The appellee filed the following statement of its claim :

" Amount of mortgage loan August 7th, 1895.........................$2,912 00
Taxes and ground rent paid............................................. ...   2,001 65
                                                                              ─────────
                                                                              $4,913 65
By cash, and dividends allowed to May 9th, 1906.....................$3,541 65

    Balance May 9th, 1906.......... .........................................$1,372 00
    Payments since May 9th, 1906.....................................   21 00
                                                                              ─────────
        Net balance.......... .............................................$1,351 00
        with interest since May 23d, 1906."

The auditor, Mr. Julian S. Jones, stated a very elaborate
and careful account covering eleven pages of printed record,
bringing the calculation down to February 25th, 1907, when
the account was filed, and agreeing almost exactly with the
claim of the appellee, when the payment of the $880, and the
interest added is taken into account.    The amount found to
be due as of February 25th, 1907, was $559.54, to which was
added the costs of suit $109.05 making a total of $668. 59.

We shall quote from the auditor's report as the readiest
method of showing the plan of his account and the principles
by which he was governed.    He says :

"The auditor has adopted the plan of stating this account
for each fiscal year.    The Association is charged with the
amounts of dues paid in by Lizzie O'Sullivan each week dur-
ing the fiscal year ; also with the amounts of interest paid in

by her each week during the fiscal year, to which is added the amount of the dividend allowed by the Board of Directors at the end of the said fiscal year.

"The Association is credited with the amount of interest due it during each fiscal year at the rate of $3.36 per week, and then the balance to the credit of Lizzie O'Sullivan at the end of that year is brought down and declared. This plan is followed for each year up to October 24th, 1906, when the said Lizzie O'Sullivan paid over to the Association the sum of $880, being the balance which she claims was due by her to the Association. From time to time during the continuance of this loan the said Association was obliged to pay the ground rent, taxes, and insurance on the mortgaged property, and at the first, the Association charged the said Lizzie O'Sullivan with interest on the amounts thus advanced until they accumulated to such an extent that the Association deducted them from the amounts standing to the credit of the said Lizzie O'Sullivan all of which will appear from the within account. The solicitor for Lizzie O'Sullivan has very strongly contended that the method of accounting adopted in *Willar* v. *Baltimore Butchers and Loan Association*, 45 Md. 546, should be applied in this case, but in the opinion of the auditor that method is not applicable in this case for the reason that the Baltimore Butchers and Loan Association was a non participating association in which the borrower did not share in the profits, and the mortgage itself declared that the mortgagor released to the mortgagee all his interest in the shares hereby redeemed and to all profits hereafter made by the mortgagee; whereas this Association is a mutual association, in which the borrower or mortgagor shares in the profits of the Association, and being a shareholder, for a certain sum redeems his shares and covenants to pay to the Association certain stipulated installments, weekly, or otherwise, until his mortgage is redeemed, not by the return of the money advanced nor for any fixed period of time, but until by the accumulation of the funds of the Association the unredeemed shares shall become of a certain value. Thus the mortgagor, though his shares are redeemed continues to have a joint interest in the Association."

In the case of *Stewart* v. *Workingmen's Building Association of Annapolis*, decided a few days ago, 106 Md. 675, we held that there was no usury in a similar transaction founded on a mortgage almost identical in language with the present. The case was submitted on brief by counsel for the appellant,

whose only contention was that the·rule applied in *Williar* v. *Loan Association*, 45 Md. 562, which held that that transac-·tion was an ordinary case of mortgagor and mortgagee, or debtor and creditor, "should prevail in the case at bar irrespective of the question of whether any excessive or usurious interest has been claimed or charged," merely because as he alleges, "few borrowers upon building association mortgages are aware or are informed as to the rules or covenants in regard to its repayment," and because, as he also alleges, "the rigid enforcement of the shareholders doctrine, as in the case at bar, is generally held by the members of the bar here (in Baltimore) and including many of those representing Building Associations and working thereunder, ·as most burdensome and unjust, and that the appellant voices their general sentiment in urging the Court to so modify or relax said rule as to place the borrowers and non-borrowers upon a more equal footing." This however is a recognition of the distinction made by the auditor between the two classes of associations to which he refers, and is a mere request to the Court to reverse its decisions founded on this distinction and running through a period of nearly fifty years.

The first exception is that the auditor did not allow interest on the weekly installments of dues and interest paid by the appellant as allowed by the decision in *Williar's case, supra.* What we have said above indicates sufficiently that this was properly overruled.

The second exception is that the account is not stated in accordance with the *Robertson's case*, 10 Md. 397, or with any other decision of the Court of Appeals, and the third exception is that the account is not stated in accordance with the terms and conditions of the mortgage as required by the Court of Appeals. These exceptions are too general and vague to require consideration. *Title Company* v. *Burdette*, 104 Md. 675, and cases there cited. But even if sufficiently specific to be considered, the views we have expressed would require them to be overruled.

The fourth exception is that the account allows usurious

interest, but the amount charged $3.36 per week, is exactly six per cent. per annum.

° The fifth exception is that no credit was given in the account for the $175.50 costs of advertisement paid August 23rd, 1906, in order to secure the withdrawal of the sale on that day in consideration of the appellant's promise to pay the amount then claimed, as alleged by the appellee, and nowhere in the record denied by her. There can be no just ground for claiming that credit.

The Circuit Court was right in ratifying the report and account of the auditor, and in dismissing the exceptions thereto, and dissolving the injunction and dismissing the bill.

*Order affirmed with costs to the appellee above and below.*