# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 31, 1923.

THE LAKEVIEW BUILDING AND LOAN ASSOCIATION, ETC.,

VS.

EDWARD H. BEYER AND CHARLES H. HOUSTON, ETC.

*Paul R. Hassencamp* and *William H. Surratt* for exceptants.

*Michael Miller* for Association.

STEIN, J.—

The facts shown by the record to be pertinent to the decision in this case are:

That the mortgage foreclosed in this case is a junior lien on the property therein named was made by Edward H. Beyer, Charles B. Houston the second, The Beyer-Houston Company, Incorporated, and Frank O. Singer, Jr., to the Lakeview Building and Loan Association, Incorporated, hereinafter called the Association, to secure the repayment of the sum of eleven thousand dollars advanced by it, on one hundred and ten shares of stock of the mortgagors, then members of the Association, which is a Maryland corporation, incorporated to do a Homestead or Building Association business; that to become such members, the mortgagors were charged and paid an entrance fee of five dollars per share, viz.: five hundred and fifty dollars, which sum, with the usual expenses of transfer, was deducted from the $11,-000.00 advanced under the mortgage.

That while this mortgage does state the amount of dues required to be paid weekly, it does contain the mortgagors' covenant to pay five thousand dollars sixty days after date; that because of a default in which covenant and as additional security for the payment of such sum, four months after date, Charles B. Houston and wife, on December 10th, 1921, gave a second mortgage on No. 3408 Elgin avenue,

which they owned in fee, Messrs. Beyer and Singer, Jr., also joining in this mortgage.

Default having occurred in the covenants and conditions of both mortgages, foreclosure proceedings on each were begun, the mortgaged properties advertised for sale; those in the $11,-000.00 mortgage, which were sold first, brought enough money to pay the mortgage debt, interest and costs of foreclosure, whereupon the sale of the property in the Elgin avenue mortgage was stopped. An auditor's account was stated in the case foreclosing the $11,-000.00 mortgage, which account allowed certain costs incurred in the foreclosure of the Elgin avenue mortgage, to which account Charles B. Houston and the receivers of Charles B. Houston and Edward H. Beyer excepted because, among other things:

1. The five hundred and fifty dollars charged as an entrance fee is usurious.

2. The above expenses in the foreclosure of the Elgin avenue mortgage cannot be allowed in these proceedings, because not a proper charge.

The second ground of exception is well taken. The expenses therein referred to cannot be collected in these proceedings. If a proper charge, they can be collected in another proceeding, such as the pending foreclosure proceedings of the Elgin avenue mortgage. I will sustain this exception, without prejudice to any right to collect such expenses in another proceeding.

In their very able oral and written discussions of the question as to whether or not the charge for entrance fee is usurious, counsel assumed as proven matters about which this record is silent. Testimony was not offered or taken by either side. Counsel for exceptants support their contention—that the entrance fee charge is usurious—by the Williar Case, 45 Md. 562, and by the Stewart Case, 106 Md. 675.

The Williar Case was an action at law "by the appellant to recover money paid to the appellees in excess of the legal rate of interest." The Court's opinion is based upon the findings of the jury that:

A. That the transaction was nothing more or less than a loan of money by the Association to the plaintiff, and

178

a mortgage of property for its repayment with interest.

B. That the fact that "the mortgagor became a shareholder and the money advanced to him was called a redemption of shares made no difference, as he subscribed for the shares in order to borrow the money, and immediately transferred or released them to the Association, and ceased to have any further interest in the assets or funds of the corporation."

The case at bar does not contain such evidence. The Stewart case arose on exceptions to an audit in a foreclosure case and was heard on an agreed statement of facts. In dealing with the subject of entrance fees, folio 683, the Court held:

Entrance fees are in no way connected under the provisions of the constitution of the Association, with the object of advances, and they enure to the benefit of all members by swelling the profits of the Association, and thereby increasing the profits for distribution."

Counsel for exceptants contend the above decisions held that entrance fees can only be charged by associations, the profits of which are shared by all members, whether borrowers or non-borrowers; such associations being of the type commonly called "serial" or "terminating" associations.

All Building and Loan Associations charge entrance fees, which form the revenue for meeting their ordinary expenses, such as rent, salaries, stationery, any balance forming part of the surplus—a necessary protection from losses—or, in the language of the Court in Baker vs. Receler, 81 Mass. 130, p. 137: "Those entrance fees are more properly applicable to the ordinary expenses of the Association, and are not properly to be considered as a deposit or payment to be afterwards allowed to the member upon any future loan."

The Maryland law gives power to charge entrance fees. Under Sec. 134, Art. 23, 1 Bagby's Code, page 596, all Homestead or Building Associations, formed under the provisions of this Article "shall have the power, in its certificate of incorporation, to prescribe the entrance fee to be paid by each stockholder at the time of subscribing." The question then arises: is there any limitation upon this power?

In the Williar Case, the opinion of the Court of Appeals was filed on February 16th, 1877, at a time when almost, if not all, building associations in Maryland were of the serial type, which usually ran out in about six years, the borrowing members always paying the same amount of weekly dues and interest, the non-borrowing members sharing in the profits and losses. One becoming a member of such an association had to pay "back dues" from the date of the birth of the association to the date when he joined, so that on joining the association, after it had been in existence for a number of months, one had to pay so large a sum for back dues as to make membership prohibitive. To avoid this a custom grew up of forming every year a new association, as an offshoot of the old, which was distinguished from the old first, by adding to the name of the old association, a distinguishing letter such as A, B, C and so on; afterwards by adding to the name of the old association, a number as First, Second, Third and so on. As this was found to be cumbersome and expensive, the Permanent type of association was formed, in which, when the weekly payment of dues on each share of a borrowing member reached the amount of a share—usually one hundred dollars—the payment of dues was reduced by twenty-five cents, and the weekly payments on account of interest by twelve cents. The borrowing member usually did not share either in the profits or losses. When the decision of the Williar Case was made, the Permanent type of association was so rare in Maryland that then the Court of Appeals did not contain the record of any case involving the rights of associations of this type, so that in discussing questions involving the rights or liabilities of building or homestead associations, the Court of Appeals discussed them in the light of existing conditions, and by its opinions did not and could not have meant that the rules applicable to Serial Associations were not applicable to Permanent associations. The distinguishing mark of a building association is neither the terminating feature nor the sharing of profits and losses among its members; but is the loan of money to its members to be used in the purchase of real or leasehold properties, usually for homes of the borrowing members, the loan and interest thereon to be repaid

in small weekly installments, the payments on account of the loan being called dues, the money lent being in part accumulated through the small weekly payments of the non-borrowing members, who receive dividends on their payments.

The statutory power to charge entrance fees, therefore, is not confined to Serial associations in which the profits and losses are shared and borne by all members, whether borrowers or non-borrowers. This follows, not only because the Williar Case and the Stewart Case do not limit the power given by the statute to Serial associations, but also because entrance fees help to make the fund out of which came the expenses of running such association.

These associations play a much larger part in the social and economic life of the people than is generally known. During one of the discussions in Congress, when it was proposed to put a Federal Tax on their incomes, it was said that the combined capital of these associations in the United States was much greater than the combined capital of all of the national banks. The Federal Census of 1893 showed a combined capital of all associations in the United States of over $450,000,000. In Maryland, the records of the State Tax Commission for the year 1921 show that there are in Maryland about 850 of these associations, whose combined capital is more than eighty millions of dollars; ninety per cent. of which (about 765) are in Baltimore City, with a combined capital of more than $72,000,000. Of the associations in Baltimore City, few are Serial; a count made several years ago showed less than six. United States statistics show that about ten years ago not over thirteen per cent. of all the associations were of the Serial type.

These associations, with their enormous capital, not only afford the home buyer, usually a wage earner, the means of buying a home upon a small cash payment, with the right to repay in easy weekly sums the money borrowed to complete the payment of the purchase price, but they also afford the only place whereby money can be saved in sums as small as twenty-five cents per week, on which dividends are paid, usually semi-annually, at the rate of six per cent. per year, ordinarily with the right to withdraw, on demand, at any meeting night. Entrance fees are necessary to cover the ordinary overhead of these associations, and to help provide a sinking fund against losses. A Court should not declare void, because usurious, such a necessary course of revenue to institutions of such value to the community, merely because of expressions in early opinions, in which were discussed the rights of Serial associations.

While a usurious charge cannot be hidden under a charge for entrance fees, and while courts will not uphold a charge for an entrance fee so large as to be unconscionable, yet as the payment thereof is always voluntary, a Court will not be eager to declare a charge for entrance fees to be usurious or excessive, at the application of one who, after having received the resultant benefit, seeks to get back a willing payment.

Counsel for the association contends that as one of the mortgagors was a body corporate, usury cannot be pleaded. The record apparently shows that the mortgage foreclosed was made, not by a corporation, but by two individual mortgagors, who owned the property, so this point is not well taken.

If I am to decide on the present record, I will overrule the exceptions to the charge for an entrance fee. If exceptants have any evidence which tends to show that the charge for entrance fees hides a usurious charge, that is a fact to be found, 46 Ga. 166, etc., on application. I will sign an order allowing reasonable time within which to do so.